HENRY KOCH, TRADING AS H. KOCH & CO., PLAINTIFF,
v. WILLIAM P. BURPO, DEFENDANT.

Submitted July 5, 1917—Decided December 7, 1917.

1. Section 17b of the Insolvent Debtors act (*Comp. Stat., p.* 2824)
is of much more comprehensive scope than section 15 of the same
act, and, being later legislation, it was apparently intended to
embrace conditions contemplated by section 15, and to leave un-
restricted the number of times that an insolvent debtor may apply
for his discharge, and an insolvent debtor who has been refused
his discharge for any cause may make any number of new
applications.

2. The remedy provided by the Insolvent Debtors act (*Comp. Stat.,
p.* 2824) makes against hardship and oppression and for humanity
and liberty, and the widest scope will be given to the language
used, in order to carry out the legislative intent.

On plaintiff's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KALISCH.

For the rule, *William Greenfield.*

*Contra, John O. Benson* and *Francis Scott.*

The opinion of the court was delivered by

KALISCH, J.   The fundamental question presented for de-
cision upon this rule to show cause is whether or not an in-
solvent debtor, who has twice made application for his dis-
charge, under the insolvent laws of this state, and had twice
been refused by the court, may lawfully make another applica-
tion for his discharge.

The plaintiff sued the defendant, sheriff of Passaic county,
for an escape.   The case was tried at the Essex Circuit, be-
fore Judge Adams, sitting without a jury, who found for the
defendant upon the following facts.

The plaintiff had recovered a judgment in the District Court of the city of Passaic against Stefanno Costello and others for the sum of $500 besides costs of suit. On this judgment an execution was issued against the goods and chattels of the three defendants, and, in case of failure of sufficient goods and chattels, against the body of Stefanno Costello. The execution being returned *nullo bono,* the body of Stefanno was taken and delivered to the sheriff of the county of Passaic.

Thereupon Stefanno gave to the sheriff an insolvent bond in compliance with the requirements of the statutes relating to insolvent debtors and, accordingly, was released by the sheriff from custody.

In compliance with the condition of the bond Stefanno duly applied to the Passaic County Court of Common Pleas for his discharge as an insolvent debtor, which application, after a hearing, the court refused, and remanded him to prison.

Stefanno immediately surrendered himself into the custody of the sheriff and upon the former entering into a new bond made and executed in compliance with the statutes relating to insolvent debtors, the sheriff released him from custody. Stefanno then again applied to the Common Pleas Court for his discharge, as an insolvent debtor, and the court, after a hearing, refused him his discharge, and remanded him to prison. Stefanno again immediately surrendered himself to the sheriff and gave a new bond in compliance with the statute, which bond was approved by the court, and, thereupon, the sheriff released Stefanno.

Counsel for the plaintiff contends that the release of Stefanno, by the sheriff, constituted an escape, and argues in support of his contention that under the insolvent laws of this state, the insolvent debtor, after having been twice refused a discharge, is not entitled to make a third application, and hence the release of Stefanno from custody, by the sheriff, was unlawful.

To sustain this view counsel relies on a proviso in section 15 of the act relating to insolvent debtors *(Comp. Stat., p.*

2830), which section, after declaring what fraudulent conceal-
ment or disposition of property by the insolvent debtor shall
be a ground for refusing him his discharge, provides "that it
shall be lawful for said debtor to make a second application
by petition, or otherwise, for the benefit of the insolvent laws
of this state, and to proceed thereon as if no former applica-
tion had been made," &c.

Because the legislature authorized, by the proviso just cited,
that it shall be lawful for the debtor to make a second applica-
tion by petition, counsel for plaintiff makes the deduction that
the legislative intent, as expressed, is to limit an insolvent
debtor to two applications.    Mr. Justice Potts, in *Race* v.
*Bird et al.,* 24 *N. J. L.* 37 (on *p.* 40), says: "The question
whether a debtor who, after a hearing upon the merits of his
case, has been refused a discharge, can legally make a new ap-
plication, has never been decided in this court, though fre-
quently adverted to.    *Sooy* v. *McKeon et al.,* 9 *Id.* 86; *State*
v. *Sheriff of Middlesex,* 15 *Id.* 68; *Voorhees et al.* v. *Thorn
et al.,* 21 *Id.* 77; and the supplement (*Pamph. L.* 1853, *p.*
21), was passed to put this question at rest for the future."

At the time the learned justice gave this deliverance there
appears to have been two situations created by the insolvent
laws of this state, in either of which a person who had been
arrested upon civil process might apply for the benefit of
such laws.

By section one of the act of 1795 entitled "An act for the
relief of persons imprisoned for debt" (*Pat. L., p.* 184; *Rev.*
1821, *p.* 216), the benefit of the act is limited to a person in
actual confinement.    This section is section 1 of our present
Debtors' act.    *Comp. Stat., p.* 2824.

And this rigorous limitation appears to have been in full
force until 1799, when by section 100 of an act entitled "An
act to regulate the practice of the courts of law" (*Rev.* 1821,
*p.* 426), the Courts of Common Pleas of this state were re-
quired to mark and lay out the bounds and rules of the person
in their several counties, not exceeding three acres of land,
&c., "and every prisoner in any civil action," by giving bond

to the sheriff with sufficient sureties in double the sum for which he was committed had liberty to walk therein, &c. If he walked out of the prescribed bounds, his bond was forfeited. The jail became co-extensive with the boundaries fixed.

A person who gave a bond to the sheriff to walk within the prison limits and kept himself therein was considered to be in actual confinement and was entitled to apply for the benefit of the insolvent laws under the first section of the act of 1795. *Smick v. Opdycke,* 12 *N. J. L.* 347.

It was not until 1830 that the rigor with which the law pursued persons arrested upon civil process was relaxed. *Pamph. L.* 1830, *p.* 299.

The first section of the act provides that a person arrested upon civil process may give a bond to the plaintiff in the action, &c., conditioned that he will appear before the next Court of Common Pleas, &c., and petition the court for the benefit of the insolvent laws, &c.

Section 2 of the act provides that the person giving such a bond shall be entitled to make an application for his discharge as fully as if he were actually confined in the common jail of the county.

Sections 1 and 2 of the act of 1830 have become sections 2 and 3 of the present Insolvent Debtors' act. *Comp. Stat., pp.* 2824, 2825.

By section 7 of the act of 1830, the court was authorized to extend the prison limits of the county or borough, so as to embrace the whole of the city, town, village or borough in which the prison shall be.

This section became section 23 of the Revision of 1847, and is section 31 of the present act.

Until the Revision of 1877, the two methods of procedure alluded to were the product of distinct and separate legislation and were classified under separate titles.

In the Revision of 1847, page 323, sections 2 and 3 appear under the title of "An act abolishing imprisonment on civil process in certain cases." This same classification is maintained in *Nix. Dig.,* 1868, *pp.* 386, 387.

The act of 1795 is entitled "An act for the relief of persons imprisoned for debt," and section 1 of that act, as amended, is section 1 of our present act under the title of "An act for the relief of persons imprisoned on civil process." And it has remained section 1 under the same title in *Rev.* 1847, *p.* 325, and in *Nix. Dig., p.* 410.

Section 2 of the present act was first brought into existence, as has already been pointed out, under the title of "An act abolishing imprisonment for debt in civil cases." The provisions of both acts were consolidated in the Revision of 1877, page 497, under the title of "An act for the relief of persons imprisoned on civil process." *Comp. Stat., p.* 2824.

It is convenient to observe here that the various acts styled as abolishing imprisonment in certain civil cases, in fact, were not designed to accomplish any such purpose, as their provisions amply show, by their being directed, wholly, to afford relief to persons who were or are confined on civil process.

That learned jurist, Judge Paterson, entitled the original act of 1795 "An act for the relief of persons imprisoned for debt," which accurately expressed the object of the act.

There appears to have been a time between the years 1795 and 1809 when the act of 1795 had become inoperative, for, in 1809, by legislative enactment it was provided "that the act entitled 'An act for the relief of persons imprisoned for debt,' passed the eighteenth of March, seventeen hundred and ninety-five, be revived and extended to all persons in actual confinement for debt or damages in any jails of this state at the time of the passing of this act," &c. *Bloomf. L.* 214.

In 1810, the act was extended so as to include every person or persons who now or hereafter may be in actual confinement for debt or damages in the common prison of any county within this state. *Bloomf. L.* 216.

Turning to the act of 1853, to which Mr. Justice Potts referred as setting at rest any doubt as to the right of a debtor to make a second application for his discharge after having been refused a discharge upon the merits, we find that the act in express terms applies only to persons who are in actual confinement for debt or damages, which term "actual confine-

ment" relates also to those persons who have given bond for the prison limits. The act is a supplement to the act entitled "An act for the relief of persons imprisoned on civil process," as contained in the Revision of 1846. By its terms it has no application to the act entitled "An act abolishing imprisonment on civil process in certain cases," contained in the Revision of 1846.

If, therefore, any doubt arose after the passage of the act of 1853, whether its provisions were applicable to persons arrested upon civil process and who gave bond and in other respects complied with section 2 of the act abolishing imprisonment on civil process in certain cases, of the Revision of 1846, that doubt has been wholly dispelled by a supplement to the Revisions of 1846 and 1874, passed in 1875 (*Pamph. L., p.* 18), which provides that if upon the hearing before the Court of Common Pleas of any county in this state, of the application and petition *any person* for the benefit of the insolvent laws of this state, and for his discharge as an insolvent debtor, under the act to which this is a supplement, that is the Revision approved March 27th, 1874, or of the act entitled "An act for the relief of persons imprisoned on civil process," approved April 16th, 1846, or any supplement thereto, the said court shall fail or refuse, for *any reason,* to discharge such person as an insolvent debtor, as provided in said laws, and such person upon such refusal shall surrender himself immediately to the sheriff or keeper of the jail of said county, it shall be lawful for such person thereupon to make out and deliver to such sheriff or keeper a new inventory and a new bond as in the manner and of the tenor and effect mentioned in the second section of the said act to which this is a supplement; and that thereupon such person shall be discharged from custody and shall be entitled to make a *new application* to said court for his discharge under the act, and that the same proceedings shall be had for that purpose as fully and effectually as if no previous application had been made.

This act is section 35 of the Revision of 1877, page 505, and section 17b of the *Comp. Stat., p.* 2831.

The term "new application," in the act of 1877, is much broader in its general sense than the term "second application," used in the act of 1853, and which is found in section 15 of the *Comp. Stat., p.* 2830.· The former term does not, in itself, imply any limitation on the number of times the application may be made.

Whether the term "second application," as used in the fifteenth section of the present act above referred to, in its connection with the circumstances therein stated, is a limitation upon the number of times that such application can be made is not strictly pertinent to the facts of this case, and, therefore, need not be considered.

It is, however, well to point out here that section 15 is section 10 of the Debtors' act of the Revision of 1846, with the provision of the supplement of 1853 relating to a second application incorporated therein; whereas, on the other hand, section 17*b* is the supplement of 1875.

Furthermore, it is quite obvious that section 17*b* is of much more comprehensive scope than section 15, and being later legislation, it was apparently intended to embrace conditions contemplated by section 15, and to leave unrestricted the number of times that an insolvent debtor may apply for his discharge, and, hence, the term "new application" was substituted for "second application."

The term "new application," being contained in a remedial statute, must be liberally and beneficially construed.

As the remedy provided by the statute makes against hardship and oppression and for humanity and liberty, the widest scope will be given to the language used, in order to carry out what appears to be the legislative intent.

Therefore, to give proper effect to the act and to carry out the legislative intent, we think that an insolvent debtor, who has been refused his discharge for any cause, may make any number of new applications.

And it is obvious that if we hold otherwise, it would be, in effect, sanctioning the imprisonment of an insolvent debtor for life, if he failed upon his second application to obtain his discharge.

Besides, it is well to mention that the contemporaneous interpretation of the insolvent laws, by both bench and bar, for the last fifty years, has been that an insolvent debtor, who has been refused his discharge, was not limited in the number of new applications for such discharge.

The result of the views herein expressed is that the insolvent debtor was lawfully entitled to make a third application for his discharge, and that upon the giving of a new bond and inventory by him to the sheriff, the sheriff had a lawful right to release him from custody. That being so, the action for escape against the defendant was without any legal basis, and, therefore, the rule to show cause will be discharged, with costs.