GENERAL CONTRACT PURCHASE CORPORATION, A COR-PORATION, PLAINTIFF, v. IDA BRONSTEIN, DEFEND-ANT.

Decided February 3, 1933.

For the plaintiff, *Green & Green* (*Ira J. Katchen*).

For the defendant, *Berlin & Berlin.*

MOUNTAIN, C. C. J. This case comes before me on an agreed state of facts. It is an action upon an insolvent bond. The condition of the bond is that one Samual Bronstein "shall appear before the next Court of Common Pleas to be holden in Union county and petition the said court for the benefit of the insolvent laws of this state and will, in all things, comply with the requirements of said insolvent laws, and shall appear in person at every subsequent court until he shall be duly discharged as an insolvent debtor, and, if refused a discharge, surrender himself immediately there-

after to the sheriff or keeper of the jail of said county, there to remain until discharged by due course of law." The breach alleged in the said complaint is that the said Bronstein did not appear before the Court of Common Pleas of Union county on October 11th, 1932, which was the next Court of Common Pleas following the execution of the bond, and that he failed on that day to petition the said court for the benefit of the insolvent laws; that he failed to properly publish or have served on the plaintiff notice in writing of the time and place so appointed by the court.

It is admitted that Samuel Bronstein did not appear before the Court of Common Pleas next holden in Union county after the execution of his bond and petition that court for the benefit of the insolvent laws.

The bond was executed May 20th, 1932.

On July 19th, 1932, he appeared before the Union County Court of Common Pleas and petitioned it for the benefit of the insolvent laws. September 30th was set as the date of the hearing on the petition. When that day arrived it was found that the plaintiff had had no notice of this hearing, as is required by law. He then made application to the judge to continue the hearing until October 7th. On October 7th he applied for an adjournment of the hearing for the purpose of filing an new petition and reserving notice to all creditors. The court signed such an order and fixed the date of hearing as of November 18th, 1932, on which date the presiding judge dismissed the petition of the insolvent debtor for want of jurisdiction and he was remanded in the custody of the sheriff. This entire course of procedure evidences a substitution for the method provided by the legislature and exacted by the bond.

The history of the insolvency laws of this state seem to be rooted in two separate lines of legislation.

To consider them separately we first find that on March 18th, 1795, the legislature passed "An act for the relief of persons in prison for debt." The benefit of this act was limited to those who were in actual confinement, and it was provided among other things that such a person could present

a petition to the inferior Court of Common Pleas and that then a time of hearing would be fixed, before which time, however, notice had to be given to the interested parties. At the time of hearing the petitioner was required to tender a just and true account of his possessions, and submit to an examination by the court. If the court and the creditors decided that the conduct of the debtor had been fair, upright and just, then assignees were appointed and the debtor was released by the sheriff. Under certain circumstances a jury trial could be had. This section is section 1 of our present Debtor's act. 2 *Comp. Stat.*, p. 2824. The act of 1795 may be found in *Pennington's Revision of the Laws of the State of New Jersey*, 1821, p. 216.

In 1799 in the Practice act passed by the legislature (Revision of 1821, page 426), the Courts of Common Pleas were required to mark and lay out the bounds and rules of the prison in their several counties not exceeding three acres of land, and any person committed in a civil action by giving bond to the sheriff had the liberty to walk therein. If he went beyond the lines which were laid out, his bond was forfeited. So long as the latter was not the case and he kept within proper confines, he was entitled to apply for the benefit of the insolvent laws under the first section of the act of 1795.

It will be observed that all this legislation contemplated rendering assistance to a person in actual confinement, whose freedom was only obtained when he had followed the procedure laid down.

In an act approved April 16th, 1846, entitled "An act for the relief of persons in prison on civil process" (*Rev. Stat.* 1847), the legislature provided "that any person who now is, or who hereafter shall be in actual confinement for debt or damages in any jail of this state, and is willing to deliver up to his creditor or creditors all his estate, both real and personal, towards the payment of his creditor or creditors, shall have leave to present a petition to the Court of Common Pleas in and for the county wherein he is so imprisoned, *at any stated term thereof,*" &c.

Meanwhile another legislative act had been passed which gave immediate freedom to the confined debtor upon the filing of a bond. This law was enacted in 1830 (*Pamph. L.* 1830, *p.* 299), and provided that a person arrested upon civil process might give a bond to the plaintiff in the action, conditioned that he would appear before the next Court of Common Pleas and petition the court for the benefit of the insolvent laws. The second section of that act provided that the person giving such a bond should be entitled to make an application for his discharge as fully as if he were actually confined in the common jail of the county. Sections 1 and 2 of the act of 1830 have become sections 2 and 3 of the present Insolvent Debtor's act. 2 *Comp. Stat., p.* 2824.

It would appear until the Revision of 1877 that the two methods of procedure alluded to were kept separate, but in that revision they were thrown together so that to-day on the one hand we find that the legislature has set forth the precise conditions of the bond which shall be given by a debtor who seeks his temporary freedom, and on the other hand we find a piece of legislation which provides among other things that he may present a petition to the Court of Common Pleas at any stated term thereof, &c., &c.

The history of this legislation has been set out by Mr. Justice Kalisch in the case of *Koch* v. *Burpo,* 91 *N. J. L.* 116; 102 *Atl. Rep.* 522.

In the case at bar the defendant urges that he followed the latter piece of legislation and that it was unnecessary, in view of the filing of his petition and certain orders signed by the judge, to appear at the next term of court as provided by the bond. It cannot be contended that this provision in the bond is of no consequence. In the case of *Koch* v. *Costello,* 93 *N. J. L.* 367; 108 *Atl. Rep.* 225, Chancellor Walker said: "Merely appearing in the Common Please Court is not a compliance with the condition to appear. The debtor is required to do more; he must appear for a purpose. He is required, by himself or counsel, to crave audience of the court and announce the purpose of his

presence, and must also in all things required of him comply with the insolvent laws. That was the undertaking in his bond."

In that case, too, recovery was allowed on a bond given in persuance of the statute, though not in accordance therewith, as a voluntary bond, &c.

To review the situation, we see two legislative vines which grew up and were apparently and finally grafted to one stout trunk by the revision of our laws made in 1877. The defendant seeks to take the benefit from the fruition of each of these vines before the grafting took place. She has filed a bond with certain definite conditions after which she has turned to the other vine and plucked those fruits most favorable to her taste. The former is irreconcilable with the latter. She took advantage of the first to free a prisoner; of the second, to show that having freed him under a solemn premise under seal, she could escape the terms of her contract because of a method of procedure prescribed by the legislature in violation of the terms of the bond. If her argument was to prevail the legislature would have impaired the obligations of the very contract upon which it insisted and whose terms it enumerated. It may be assumed that the legislature never meant to prescribe the terms of a bond on the one hand and on the other to enact a system of procedure which would destroy it.

The plaintiff is entitled to judgment against the defendant in the sum of $1,265.48, with interest from April 1st, 1932.