The petitioners, as trustees under a deed of trust made by George H. Hartford, now deceased, appeal from the transfer inheritance tax levied in respect of that deed of trust underP.L. 1909, ch. 228, as amended by P.L. 1914, ch. 151. *Page 490 
Decedent was the owner of 6985 shares, (out of a total of 7000), of the common stock of Great Atlantic Pacific Tea Co. On April 7th, 1915, he executed his last will and testament, and at the same time executed and delivered a deed of trust whereby he conveyed to trustees all of the stock aforesaid, in trust to pay the income to himself for life and after his death equally to and among his five children or their issue or testamentary appointees, — the corpus to be similarly distributed among such issue (or testamentary appointees) of his children, when both he and his last surviving child should be dead.
Two years later, on June 1st, 1917, the decedent assigned to his five children, equally, the income thereafter to accrue to him under the provisions of the trust; and three months later, on August 29th, 1917, he died, leaving an estate (not including the trust fund) of approximately 3 1/4 million dollars, which passed under his will. The levy of transfer inheritance tax with respect to this testamentary estate is not in dispute.
The commissioner, however, also assessed tax in respect of the aforesaid transfers inter vivos. Appellants contend that this was erroneous because (they claim) (1) these transfers were not made in contemplation of death; (2) they are not taxable as transfers intended to take effect in possession or enjoyment at or after the death of the transferor, — because of the effect of the subsequent assignment; (3) the subsequent assignment of income did not come within either of these two categories; and (4) if any of the transfers be taxable, the tax appraisal should have been made as of the date of the transfer, April 7th, 1915, instead of as of the date of death, August 29th, 1917.
 1. Taxability as in contemplation of death.
That the gifts made by the deed of trust to decedent's children and their issue, or testamentary appointees, were made in contemplation of death, is clear under the circumstances of that transfer and the law as presently established in this state. At the date thereof decedent, although in good health, was over 81 years old, and he died within 2 1/2 years *Page 491 
thereafter. The deed of trust reserved to himself the income for life, and made a final disposition and distribution of the remainder to and among the members of his family and the natural objects of his bounty, substantially similar to the testamentary disposition of the balance of his property provided for by the terms of his will which he executed at the same time. The value of the property transferred, at the time of the transfer, was approximately $2,500,000, and constituted nearly half of his assets. Obviously it was a transfer made in lieu of a testamentary disposition, and is taxable as a transfer made in contemplation of death, under the meaning and intent of the statute. In re Schweinler, 117 N.J. Eq. 67, 175 Atl. Rep. 71;affirmed, 13 N.J. Mis. 722, 180 Atl. Rep. 774.
Appellants contend (and there is testimony in support thereof) that the impelling motive for this transfer was the decedent's desire, based on sound financial and economic principles and then present circumstances, and also on the advice of counsel, to perpetuate control of the stock of the company in his two sons (the trustees) in order that outside capital could be attracted to invest in the company. Taking this to be true, it is nevertheless equally true that it was not requisite for decedent to make this "testamentary disposition" in order to accomplish the trusteeship and the consummation of his desire aforesaid. Furthermore, even if the desire aforesaid was an impelling motive for the transfer, and one without which the transfer would not have been made, it is nevertheless clear that it was not the only impelling motive for so much of the transfer as constitutes the "testamentary disposition;" and that, for that part of the transfer, the desire and intent to accomplish an ultimate disposition and distribution of his estate in lieu of a testamentary disposition in that behalf, was an impelling motive without which such ultimate disposition would not have been thereby effected. It is not a requisite of taxability that the contemplation of death should have been the sole motive for the transfer. In re Schweinler, supra; In re Grabfelder,107 N.J. Law 520, 153 Atl. Rep. 532. *Page 492 
 2. Taxability as intended to take effect after death.
In the second place, it is also clear that these transfers to the children by the deed of trust, besides being made in contemplation of death, were transfers intended to take effect in possession or enjoyment at or after the transferor's death. The deed created an equitable life estate in the transferor for his own life, followed by secondary life estates (for the lives of the five children) and by complete equitable remainders. Neither the secondary life estates or the remainders were to take effect in possession or enjoyment until at and after the transferor's death. The taxability of such transfers is not open to question, unless the subsequent assignment of his equitable life estate by decedent in 1917 operated to deprive them of taxability under this category. Appellants contend that that assignment did so operate.
Their argument is to this effect: If a donor reserves to himself a life estate and transfers the remainder, the transfer of that remainder is taxable. If however the donor does not reserve a life estate but transfers the complete estate, that transfer is not taxable, (unless made "in contemplation of death"). If, after a transfer of the estate in remainder subject to a life estate in himself, the donor transfers his life estate to the same transferee, he has thereby effectuated a transfer of the complete estate; the life estate and remainder merge into a complete estate; the transferee's possession and enjoyment is no longer postponed until the transferor's death; and hence there is no taxable transfer any more than there would have been if the complete estate had been transferred at the one time as a whole. The situation in the case sub judice is essentially similar to the case just stated; by the deed of trust a life estate was created or reserved in the donor himself and interests subsequent to donor's life were transferred to donor's children and their issue; by the assignment in 1917 of the donor's life estate to the donor's children, the donor's life estate was merged in the subsequent life estates to the children so that thereafter the children were in full possession and enjoyment of estates for their own lives and there remained no interests which were dependent on or postponed *Page 493 
to the donor's death, hence the taxability of those interests was thereby terminated or extinguished.
This argument is unsound for several reasons.
In the first place, — it is doubtless true (and at any rate may be admitted for the sake of argument) that where one transfers a remainder, reserving a life estate to himself, and thereafter transfers his life estate to the remainderman, a merger occurs between the life estate and the remainder and the donee is vested with ownership and possession of the entire estate. It by no means follows therefrom, however, that the transfer of the remainder is thereby rendered non-taxable.
It is true that it has repeatedly been held, in upholding the taxability of certain transfers, that where there are two or more instruments or acts which in the aggregate constitute a single transaction, it is the entire transaction which must be considered in determining the taxability of a transfer which considered by itself alone might appear to be non-taxable. It is also true that it seems not unreasonable to argue that this principle should be just as applicable when the result thereof would enure to the benefit of the tax payer as when it would result to his detriment. The present instance, however, is not one in which the principle can be applied.
In the present instance the deed of trust and the subsequent assignment of the donor's life estate created by that deed of trust clearly were not parts of a single transaction: they were two entirely separate and distinct transactions. At the time of the deed of trust there was no transfer of the donor's life estate effectuated nor intended to be effectuated, — either by that deed itself or by any other instrument or act. The gift of the interests after the donor's life and the subsequent gift of the reserved life estate were clearly just as separate and distinct as if the decedent had first made an absolute outright gift of $500,000 and then two years later made another similar gift of $100,000.
Furthermore, — even if transfers of the donor's life estate and of the remainder interests subsequent to that life estate had been separately made in the one single instrument, — so *Page 494 
that the instrument, considered as a whole, effectuated at the one time a complete and immediately effective transfer away from the donor of the whole of the donor's estate and interest, — such separately expressed transfer of the remainder interest would still have come within the express terms of the statute, as being a transfer taking effect (and so intended) in possession or enjoyment at or after the death of the transferor. Under the law in this state it would therefore be taxable. This was expressly so held, reversing this court, in Koch v. McCutcheon,111 N.J. Law 154, 167 Atl. Rep. 762, and would be dispositive and controlling, notwithstanding the determinations in other jurisdictions, including the United States supreme court, which have been cited by appellants.
The appellants further contend however that notwithstanding the deed of trust and the 1917 assignment be not deemed parts of a single transaction, nevertheless the life estate operated to prevent the transfers of the interests subsequent to that life estate from being taxable as transfers intended to take effect in enjoyment after the donor's death, — and this for two reasons.First, that the result of that assignment was a merger of the donor's life estate into the subsequent life estates of the five children, so that after such assignment there were no equitable life estates commencing at, and not until, the donor's death, but the life estates in the children were already vested in enjoyment as well as in title prior to the death of the donor; and the interests in the remainder (corpus) were no longer in any wise dependent on, or deferred to, the death of the donor, but were only dependent on and subject to the deaths of the children.Second, that even if no merger took place, nevertheless after and because of the assignment the children immediately and prior to the death of the donor became entitled to, and did, commence to receive the income from the trust fund; so that their enjoyment of the trust fund was not postponed until the death of the donor but commenced during his lifetime. Under this view it is tacitly admitted that as to the interests in the remainder (corpus), the transfer would be taxable. *Page 495 
As to argument "first," (supra), — it seems clear that under the law of this state no merger resulted from the assignment.
The trusts created by the deed of trust were, first, to pay the income during the donor's life to the donor; second, to pay the income during the period from the donor's death to the death of the last survivor of the children, one-fifth thereof to each child during his or her life, and thereafter to his or her issue or testamentary appointees; third, at the death of the last surviving child to pay over the corpus, one-fifth thereof to the respective issue or testamentary appointees of each child. There was therefore an equitable life estate in the donor; followed by equitable life estates in the children, vested in title but subject to be divested in favor of their issue or testamentary appointees if they predeceased the donor-life tenant; followed in turn by equitable life estates (estates for the life of the last surviving child) in the issue or testamentary appointees of the children; followed by the equitable remainders (at the death of the last surviving child) in the issue or testamentary appointees of the children.
In Schmieder v. Meyer, 97 N.J. Eq. 335, 127 Atl. Rep. 162,
our court of last resort dealt with a situation essentially similar. The trusts there were fewer and simpler and were created by will instead of by deed; but these differences are in nowise material. In that case there was an equitable life estate followed by vested remainders in the several children, each of which remainders was subject to be divested in favor of the issue of the child, if such child died before the arrival of the distribution or enjoyment (i.e., the death of the life tenant). The life tenant after accepting, assigned her life interest to the children. It was held that there did not result thereby any merger of the life estate with the next succeeding estates; that the life estate was not terminated by the assignment but continued in existence; and the time of distribution (or commencement of the period of the right of enjoyment) of the next succeeding estate was not accelerated but still remained coincident with the death of the life tenant, notwithstanding the life tenant's assignment of her interest.
So in the instant case. Under the deed of trust the life *Page 496 
estates of the children were made to commence at the death of the first life tenant; they were vested in title but subject to be divested in favor of their respective issue or testamentary appointees if they did not live until the death of the first life tenant. The assignment by the first life tenant to the children who were vested of the next succeeding estate but subject to divestment if they died before the commencement of the right of enjoyment of that estate, (i.e., at the death of the first life tenant) effected no merger with that next estate, — the first life estate was not terminated nor extinguished but merely assigned, — and the rights to the enjoyment of the next succeeding estates still remained deferred until the death of the first life tenant, the donor.
As to the argument "second," (supra), it is true that after and because of the assignment the children immediately and prior to the death of the donor became entitled to receive the income from the trust fund; but that income which they so became entitled to receive was not the enjoyment of the secondary life estates given to them. It was the enjoyment of the first life estate (reserved to the donor) and came to them strictly as such, by reason of the assignment to them of that first life estate. The time of the commencement of their right to enjoyment of their secondary life estates was not accelerated but remained, as before, dependent on and deferred until the death of the first life tenant, the donor. If all five children, — or any of them, — had died after the assignment and while the first life tenant (donor) was still living, the right to the income for the ensuing period would have passed to the testamentary beneficiaries or intestate successors of such child or children by virtue of the law with respect to succession from them, not to their "issue or testamentary appointees" by virtue of the operation of the deed of trust. The (equitable) title of the children to the income during the life of the first life tenant (donor) vested in them indefeasibly by virtue of the vested indefeasible assignment to them by the first life tenant of the right to that income for his life which was given to and vested in him by the deed of trust; it was in nowise subject to divestment (by their *Page 497 
predeceasing the first life tenant) in favor of their issue or testamentary appointees. On the other hand, the right to the enjoyment of the income during the secondary life estates, — the taking effect in enjoyment of those estates, — still remained dependent upon, and deferred until, the death of the first life tenant (donor), and hence would not have vested, and would never vest, in enjoyment in the children who predeceased the donor, but would vest in their substitutionary contingent beneficiaries as provided by the deed of trust.
The assignment of 1917, therefore, did not operate to effect any change in the commencement of the enjoyment of the secondary life estates created by the deed of trust. As to those secondary life estates, the commencement of the enjoyment thereof still was deferred until the death of the original first life tenant, the donor; hence the transfers of those secondary estates effectuated by the deed of trust still remained "intended to take effect in enjoyment at or after the death of the transferor;" and hence those transfers remained and were, and are, taxable as such under the statute. The right to the enjoyment of these secondary life estates did not, and could not, notwithstanding the assignment of 1917, fully pass to the transferees until the death of the donor.
So also as to the ultimate remainders. Their commencement, their vesting, was by the deed of trust expressly made to take place at the time when the first life tenant (donor) and the last surviving child had both died. They did not, and could not, take effect until the death of the donor occurred, — notwithstanding the assignment by the life tenant of his interest. They also are taxable as such under the statute.
There was therefore no error on the part of the tax commissioner in determining that the transfers of all of the estates and interests subsequent to the life estate of the donor were taxable as transfers intended to take effect in enjoyment at or after the death of the transferor.
 3. Taxability of donor's life estate.
The subsequent transfer of the reserved life estate, by the assignment in 1917, was of course not one which did, or was *Page 498 
intended to, take effect in possession or enjoyment at or after the death of the assignor; and hence is not taxable on that ground. It would seem clearly taxable as a transfer made in contemplation of death; it was made to decedent's five children, who are the principal beneficiaries under his will; was made when decedent was 83 years old and only three months prior to his death, and at a time subsequent to an attack of angina pectoris
(which must have been recognized for what it was, by a man of decedent's intelligence, even if he was not so advised by his physician). However, this seems to be of no materiality, since it does not appear from the record that any tax was assessed in respect of this assignment.
 4. Date of appraisal.
The remaining contention of appellants is that the commissioner erred in appraising the value of the property transferred; that if the transfers are taxable at all, they are taxable as having been made in contemplation of death, but are not taxable as transfers intended to take effect in enjoyment at or after the donor's death; that as to transfers made in contemplation of death, the value of the property transferred is to be appraised as of the date of the transfer, whereas the commissioner's appraisal was made as of the date of the transferor's death.
Appellants concede that as to transfers intended to take effect after transferor's death, the appraisal should be made as of the date of transferor's death. In view of the conclusion reached herein that the transfers which have been taxed by the commissioner were correctly found by the commissioner to be transfers intended to take effect after transferor's death, it follows that he has made no error in making his appraisal as of the date of death, notwithstanding that it appears that the transfers were also made in contemplation of death.
Whatever may be the rule as to transfers in contemplation of death which are fully and immediately effective at the date of the act of transfer, it seems both logical and within the letter and the spirit of the statute, that transfers intended to take effect at or after death should be taxed on valuations as of the date of death, — the date of the intended taking *Page 499 
effect, — notwithstanding that such transfers have also been made in contemplation of death. The latter feature in nowise alters the former feature; and the general purpose and object of the statutory provisions taxing such inter vivos transfers is in substitution for, and to prevent avoidance of, taxation on transfers by will or intestate succession at death. It would seem therefore, that wherever possible the tax should be computed on the valuation at the date of death; and in the case of transfers intended to take effect at or after death, the transfer does not become ultimately and wholly complete until such death.
 The tax will be affirmed. *Page 500