This is an appeal from the transfer inheritance tax levied in the estate of George W.E. Atkins, deceased, who died testate, domiciled in this state, November 9th, 1936. Tax was assessed against the transfer under his will of property valued at a little less than $200,000; also against the transfer of property passing under an inter vivos trust deed executed *Page 188 
and delivered on May 16th, 1929; and also against transfers made to decedent's two sons under certain "refund annuity" agreements between decedent and certain respective insurance companies.
There is no dispute as to the tax on the testamentary transfers, nor as to amounts or computation as to the other transfers; the only questions in issue are (1) the taxability of the transfers under the trust deed, and (2) the taxability of the transfers under the refund annuity agreements.
 THE REFUND ANNUITY TRANSFERS.
First as to the transfers under the refund annuity agreements. There were six of these agreements, or "policies," with two insurance companies, all essentially alike, purchased in the period between July, 1932, and October, 1935. The decedent paid a lump sum, called the "capital investment," to the insurance company and received in consideration thereof an agreement whereunder the company bound itself to pay to the annuitant certain fixed, equal, monthly payments during his life, and if the annuitant should die before receiving monthly payments aggregating the amount of the "capital investment," to continue the monthly payments after his death until the total of said payments equalled the amount paid in; the payments, (if any), subsequent to Mr. Atkins' death were to be made to his two sons, as beneficiaries designated by Mr. Atkins; and the right was reserved to Mr. Atkins to change the said beneficiaries during his life.
It seems clear that the transfers to the two sons, under these contracts, are gifts inter vivos "made in contemplation of the death of the donor;" and they are also gifts "intended to take effect in possession or enjoyment at or after such death." Under our statute they are therefore taxable in either of those aspects.
That these are, in substance and effect, transfers by the decedent, although the actual payments to the sons are to be made by the insurance company, is obvious. The payments (if any) to be made to the sons, constitute repayment by the company of the equivalent of so much of the capital sum *Page 189 
invested by decedent as has not previously been repaid to the decedent himself. That which is to be paid by the company to the sons is in substance and effect, simply that which the decedent has paid to the company and directed the company to pay to the sons. If otherwise taxable, these transfers are not saved from taxability because made through the medium of a third party. Inre Gemmell, 123 N.J. Eq. 315, and cases cited at p. 321,197 Atl. Rep. 428.
By the express terms of the contracts the sons take nothing thereunder until the death of the annuitant grantor; that which comes to them comes only at and after his death. It is a supererogation to say that these gifts were intended by decedent to take effect in possession or enjoyment at or after his death. He intended that which he expressly provided.
It is equally clear that these (contingent) gifts to the sons were made by the donor in contemplation of his death. It may be conceded that he had no apprehension of death other than as an event certain to occur at some time in the indefinite future. A transfer is taxable under that clause, however, if made in and because of such contemplation of death as that which leads to testamentary disposition, — if made with the intent and purpose that it be in lieu of testamentary disposition. Schweinler v.Martin, 117 N.J. Eq. 67, 175 Atl. Rep. 71; affirmed, 13 N.J.Mis. R. 722, 180 Atl. Rep. 774; In re Hartford, 122 N.J. Eq. 489,194 Atl. Rep. 800; Nicholas v. Martin, 128 N.J. Eq. 344,15 Atl. Rep. 2d 235.
That these transfers to the sons in the instant case were made in lieu of testamentary disposition is indisputable; they are specifically, expressly and solely, provisions as to the postmortem disposition of a part of the assets of his estate, — the value, at his death, of the unpaid instalments under the contracts.
Appellants contend that these transfers are not taxable because the primary purpose and motive of the decedent in taking out these contracts was to make provision for himself for life, not to provide a distribution of his property after his death.
If this contention were sound it would of course be of no practical benefit to appellants, for it still would remain true *Page 190 
that the gifts would be taxable as being intended to take effect in possession or enjoyment at or after death. However it is not sound, and hence not efficacious to preclude taxability of the gifts as made in contemplation of death.
As pointed out, and held, in Nicholas v. Martin, supra, it is not a requisite of taxability on this ground, that the transferor's primary object and purpose in making a transfer which is in fact made and intended as in lieu of a testamentary disposition, should have been to make provision for the postmortem distribution of his estate (or a part thereof); it is sufficient if he in fact, regardless of what may have been his primary object in so doing, makes a transfer which is in fact made and intended as in lieu of a testamentary disposition.
Moreover, in the instant case, this contention of appellants is unsound, because we are here concerned not with the provision for repayment from the company to the annuitant during his life, but simply with that part of the transaction which provides for the contingent, eventual post mortem payment to the sons. It is only this latter transfer which has been taxed. If the contract had not contained this provision, but had instead provided that any portion of the capital investment which had not been repaid to the annuitant during his life, should at his death be paid to his estate, — his executors or administrators, — there would have been no taxable transfer in and by the contract. In that case such unrepaid balance would pass under his will and be taxable as a testamentary transfer. The decedent however did not so provide; instead he made a conscious choice between such provision and a provision for post mortem distribution to his sons, decided in favor of the latter, and acted accordingly — thus making, by this provision of the contract, a transfer intentionally in lieu of testamentary disposition, — taxable as made in contemplation of death under the established intent and meaning of the statute.
Appellants rely on the principle, set forth in such cases asIn re Kellogg, 123 N.J. Eq. 322, 197 Atl. Rep. 263, (and the cases therein cited on p. 325), that where a transferor makesinter vivos an absolute, immediately effective transfer *Page 191 
of property in exchange for an agreement by the transferee to pay an annual sum to the transferor during the transferor's life, the transfer is not taxable (under the "intended to take effect at death" clause), unless the annual sum to be paid to the transferor comes from or is connected with or dependent upon thecorpus or income of the actual property transferred.
That principle, and those cases, obviously have no application here. Those cases deal with the taxability of a transfer from the transferor to the original transferee where the transferor retains or receives back something which is similar to the beneficial enjoyment, during his life, of the property transferred, — thus raising the question as to whether or not the transferor intended the ultimate transfer of actual beneficial enjoyment to the transferee to take place only at or after the transferor's death. They do not involve any promise by the transferee to pay over or transfer something to a third party atthe transferor's death. The present case does; and the thing which the transferee agrees to pay over to the third party is a part of, or "identifiably tied up with," and dependent upon, the property transferred by the transferor to the original transferee.
The present case is in effect, (in so far as concerns that portion of the original transfer which is not repaid to the transferor during his life), a (contingent) transfer, through an intermediary, to the third party to take effect only at the transferor's death.
The situation is no different as to taxability even if it be deemed that the sum or amount which the insurance company agreed to pay to the sons, is not actually a part of, or identifiably tied up with, the thing transferred by the annuitant to the insurance company. The transferor, under the agreement of the insurance company, had a right to have repaid to himself or to his estate, the amount of the capital investment in equal annual payments, — because there was reserved to him the right to change the post mortem beneficiaries. That right, at the moment of the transferor's death, was of the value of the balance then remaining unpaid; and that right (and the value thereof) actually ultimately passed to the two sons only at the annuitant's death, — because he *Page 192 
had not until then lost the right to revoke the beneficence to the sons. Cf. Kings County Trust Co. v. Martin,121 N.J. Law 290, 2 Atl. Rep. 2d 187; Graves v. Elliott,307 U.S. 383.
This also disposes of the contention put forward in appellants' brief, to the effect that the interest passing to the sons is not taxable because its passing to them was only contingent, and that, under the mortality tables and their father's age and expectancy of life, the value of their expectancy of receiving anything thereunder was nil, at the time their father made the agreements.
Irrespective of all this of course, the transfer to the sons is still taxable as made in contemplation of death.
Appellants further contend that these transfers to the sons are not taxable, because (they say) proceeds of life insurance policies passing to named beneficiaries are exempt from taxation, and because these annuity agreements are (they say) life insurance policies. In that contention this court cannot concur. The applicable statutory provisions are those found in R.S.54:34-4, b and c; (subsections f and g were not passed until 1939).
These statutory provisions for exemption existed in precisely the same form prior to the Revision of 1937 and were in force and effect during the period of the making of the annuity agreements in question, and also at decedent's death. They are not, however, applicable to the situation sub judice, because this situation does not involve any trust deed, trust agreement or trust fund, and especially it does not involve any trust fund resulting "from the proceeds of contracts of insurance * * * insuring the life of decedent and payable at or after the death of decedent to the trustee" under such trust agreement.
Not only do the contracts under consideration create no trust fund, nor provide for any payment to any trustee nor for the benefit of any cestui que trust, but they are not even "contracts of insurance * * * insuring the life of decedent."
It may be assumed for the sake of argument that the transfer to named beneficiaries, of proceeds of life insurance *Page 193 
policies, would not be taxable, even though under such policies the insured retained the right to change the beneficiaries, —Cf. In re Gemmell, 123 N.J. Eq. 315, 197 Atl. Rep. 428, at pp.319 et seq.; but the contracts in question are not life insurance policies. A life insurance policy is a contract whereby the insurance company agrees to insure or indemnify the beneficiary against the death of the insured; it is a contract by which the insured protects the beneficiary against loss accruing by the early or premature death of the insured. The refund annuity contract such as we are here considering is very different. By it the insurance company agrees to repay to the annuitant, in instalments during his life, the amount paid in by him to the company, and if at his death there be a balance unpaid to him, to pay that balance to the person designated by the annuitant to receive the same. It is a contract by which the annuitant protects himself, during his life, by making an investment which will assure the receipt by himself, of an adequate or desired annual sum during his life, with the further assurance that if he should die prematurely, his estate or those whom he desires to receive distribution thereof, will not suffer the loss of the repayment he has himself not yet received. In the judgment of this court this is not a life insurance policy.
The question is res nova in this state. There are authoritiespro and con in other jurisdictions, but those in accord with the conclusion herein reached are deemed to have the support of better logic and reason.
Reference is made by appellants to the fact that the amounts passing to the sons under these agreements, constitute only a small part of decedent's estate. If by this it is meant to suggest that the transfers are for that reason not taxable, the suggestion is unsound. The statute provides that transfers intervivos of a material portion of the transferor's estate, under certain circumstances shall be prima facie deemed to have been made in contemplation of death. But there is no provision, express or implied, which says that a transfer which is in fact made in contemplation of death or intended to take effect at or after death, shall not be taxable unless it be of a material portion of the transferor's estate. Moreover the *Page 194 
transfers to the sons in the instant case aggregate some $28,600, — a sum which is by no means de minimis, either actually or in relation to the assets of approximately $200,000 at that time owned by decedent.
 THE TRUST DEED TRANSFERS.
Next as to the taxability of the transfers under the deed of trust. This deed was executed and delivered by decedent on May 16th, 1929, in the State of New York. Admittedly the entire property conveyed thereby consisted of intangible personalty, the legal title to which, and the beneficial ownership of which, was in the grantor, who was then and for a considerable time prior thereto had been, a domiciled resident of New Jersey. The "securities" or paper evidence of ownership of this intangible personalty were at that time, and for some time previously, and at all times subsequently until the death of decedent, physically located in the State of New York. Prior to the making of the deed they had been in the custody of an agent of said owner. The trustee was a corporation of, and having its office in, the State of New York. The trust deed provides by its express terms that it is to be construed according to the laws of the State of New York. Decedent, grantor of the trust, continued to be domiciled and resident in New Jersey at all times subsequent to the execution and delivery until and at the time of his death.
The trust deed provided, in essence, for an equitable life estate to the grantor for life, and thereafter to his wife for life (if she survived him), and that the corpus in remainder be paid to the grantor's two sons if living, — with substitutionary gift over in case of their prior death. The wife predeceased the grantor; the two sons both survived him.
The tax levied and assessed with respect to the transfers under this deed of trust, and as to which the present appeal is taken, was as to the transfers of the remainder interests to the two sons.
The specifications of alleged error, or the grounds of this appeal, as set forth in the petition of appeal, may be more succinctly set forth as follows: *Page 195 
 The property which comprised the trust fund was located outside the territorial limits of New Jersey at the time of execution of the trust deed; the trust deed was executed outside of New Jersey; the legal title to the property transferred by that deed was transferred to a corporation domiciled in New York; the legal title to the property and the possession thereof has at all times since remained in that trustee entirely outside of New Jersey; and under these circumstances
 a. the transfer of the trust property is not made taxable under the provisions of our statute.
 b. the State of New Jersey had no constitutional power to tax the said trust property because the situs thereof at the time of taxation was not within the territorial limits of this state.
 c. if the provisions of our statute authorize or direct the taxation of the property of the trust fund, then such provisions and such taxation are unconstitutional, because a state has no power or jurisdiction to tax property, or the transfer of property, when such property is located, or such transfer is made, outside the limits of its own territorial boundaries.
Not much time need be spent in considering b. above, — inasmuch as no tax was here imposed on the property. The tax appealed from was imposed upon the transfer of certain interests in property.
Moreover, even if the tax had been imposed on the property itself, (presumably, appellants mean the property which was conveyed by the grantor to the trustee), the allegation is unsound. That property was admittedly intangible personalty; and the power to tax such property inheres in the state of the domicile of the owner thereof. Curry v. McCanless,307 U.S. 357, — at 368, and 370.
As to a., above, — reference to the provisions of the statute will show that this allegation, — (that the statute does not purport to impose a tax such as that here sub judice in the situation and circumstances present in the instant case), — is *Page 196 
without foundation. On the contrary such a transfer clearly comes within the scope of the express terms of subsection first, of section 1, of the statute in force and effect at the date of the transfer and the date of the transferor's death, — P.L. 1909, c.228, p. 325, as amended. (It is also to be noted that it comes within the scope of the express language of the corresponding sections of the present statute, — R.S. 54:34-1 c. and d.)
The statute (see section 1 thereof) expressly imposes tax,inter alia, upon every transfer of any property of the value of $500, or of any interest therein or income therefrom, made by a resident, by deed made in contemplation of the grantor's death or intended to take effect in enjoyment at or after such death. Under the express words of the statute therefore, the tax is imposed on the transfers made by the present deed of trust, because that deed was made by a resident of New Jersey; it transferred to the trustee property of the value of over $500, and also transferred to the two sons contingent equitable interests in remainder in that property (which interests were also of the value of over $500); and these transfers of the equitable interests to the two sons were made by deed made in contemplation of the grantor's death and also they were intended to take effect in enjoyment or possession at or after such death.
That these transfers to the sons were intended to take effect in possession or enjoyment at or after the grantor's death is obvious; the trust deed expressly so provides, and hence necessarily intends. That they were made in contemplation of the grantor's death is equally beyond doubt. The grantor was aged seventy-nine at the time he made the deed; the deed provides for the post mortem distribution of the trust fund; the trust fund comprised some $390,000 or approximately two-thirds of his estate; and the deed was executed contemporaneously with the execution of his will which provides likewise for the postmortem distribution of the bulk of his testamentary estate to the wife for life with remainder to the sons. See Schweinler v.Martin, 117 N.J. Eq. 67, 175 Atl. Rep. 71; affirmed, 13 N.J.Mis. R. 722, 180 Atl. Rep. 774; In re Hartford, 122 N.J. Eq. 489,194 Atl. Rep. *Page 197 800; affirmed, sub nom. Hartford v. Martin, 122 N.J. Law 283,4 Atl. Rep. 2d 31; In re Fischesser, 14 N.J. Mis. R. 815,187 Atl. Rep. 648; Nicholas v. Martin, 128 N.J. Eq. 344,15 Atl. Rep. 2d 235. The nature of these transfers is at least tacitly admitted by appellants; who likewise do not controvert the proper appraisal, computation and levy of the tax, if the transfer is constitutionally subject to the operation of the statute.
It must needs also be admitted by appellants, — and indeed they do not contend otherwise, — that there is nothing in the provisions of our statute which expressly or impliedly exempts from taxation, such transfers as the one here under consideration.
The real contention of appellants is that the transfers by the trust deed are not subject to the taxing power of New Jersey because that deed and the transfers thereby made were made and took place outside the territorial boundaries of this state; were made to a non-resident trustee; by a deed which expressly provided it should be construed according to the laws of New York; and the property transferred was then, and at all subsequent times, outside the territorial boundaries of this state; further, that the transfers of interest to the sons did not take place until the death of the grantor, inasmuch as the interests given to the sons were contingent upon the sons surviving the grantor, and until his death leaving them surviving, no gift vested in them; that at grantor's death he was not the owner of the property conveyed by the trust deed, (legal title to which was then in the New York trustee); hence New Jersey could not validly impose a tax upon that transfer at the grantor's death, notwithstanding the statute purports so to do.
The power of a state to impose a tax upon property, or upon the owner of property, rests upon the dominion and control of that state over that property or over the owner. See Curry v.McCanless, 307 U.S. 357, at p. 366.
Although there is of course a difference between a tax on property and a tax on the transfer of property, that difference is not material on this matter of sovereignty based on control. A state which by reason of physical control over property *Page 198 
within its borders, has the power to tax that property, must equally have power to tax the transfer of such property, because by reason of its physical control, it can (except as forbidden by the federal constitution), impose conditions upon, or prescribe the methods necessary to accomplish, or even forbid completely, the transfer of that property. Cf. statutes forbidding the ownership of real estate by aliens, or by foreign corporations, and the like; also the statutes prescribing necessary requisites for accomplishing conveyance, by will or by deed, of property within the state's borders.
Since it is the state in which the property is situate which has the power and right to prescribe the requisites for accomplishing a transfer of that property, it seems clear that if that state does not include among such requisites some provision as to the place where that act of transfer must necessarily be made in order that the transfer be valid and effectual (assuming that such a provision would be constitutional) it is utterly immaterial where that act of transfer is performed so long as it complies with such other requisites as the state of situs has prescribed. Conveyances of real property in New Jersey are constantly made both by deeds executed outside of this state and by wills of decedents who are non-residents of New Jersey, and no one has ever suggested that their validity might be open to question because they were not made in the State of New Jersey; on the contrary, that their validity is not subject to question on that ground is indicated by the statutory provisions for the recording in this state of foreign wills and for the taking of acknowledgments in foreign states of deeds conveying New Jersey real estate, and the like.
Inasmuch, then, as New Jersey, having the power to prescribe the methods and requisites necessary to accomplish a valid transfer of property within its borders, and the power to tax such a transfer has not included in the necessary requisites for effectuating a valid transfer any requirement that the act of transfer must be performed within this state, it follows that an act of transfer performed outside this state, if it in all other respects complies with such provisions as New Jersey has made requisite to effectuate a valid transfer, does accomplish a valid transfer and a statutory tax imposed *Page 199 
by New Jersey upon transfers of property located in this state will apply to and be operative upon that transfer just as much as on a valid transfer effectuated by an act performed in New Jersey.
Therefore the fact that in the instant case the act effectuating the transfer was performed in New York, by the execution and delivery there of the trust deed, is a matter of no moment so far as concerns the validity of the tax. No constitutional provision is cited, or known, which would make it requisite to the validity of a tax imposed by New Jersey upon the transfer of New Jersey property, that the act of transfer must take place in New Jersey; our taxing statute provides for no such limitation; there appears no logical reason, nor any reported adjudication by the courts of this state or of the United States, to support the contention that such a limitation should be inferred. The only authority proffered by appellants in support of their contention in this behalf, is the case of Cutts v.Najdrowski, [*]123 N.J. Eq. 481, 198 Atl. Rep. 885, and the case of MacClurkan v. Bugbee, [*]106 N.J. Law 192,150 Atl. Rep. 443, — but neither of these cases in fact affords any such support.
In the MacClurkan case, a deed of trust, irrevocable for five years, was made in Illinois by a grantor who then resided in Illinois, which comprised no property located in New Jersey. The question before the court was as to the validity of a transfer tax by this state on the transfer made by a non-resident, of a contingent interest which became vested at the death of the grantor, the grantor having meanwhile become a resident of New Jersey and died within the five-year period of irrevocability. Since the deed when made comprised no property located in New Jersey it did not come within the scope of the provisions of the New Jersey statute relating to tax on transfers made by non-residents. It was held that it also did not come within the scope of the provisions for the taxation of transfers by residents, because the trust deed when made was made by a non-resident, who, though she later became a resident, never had any power or control over the transfers provided in that deed, and although the contingent life estate vested while she was a resident, *Page 200 
it did so by reason of the deed of trust made when she was a non-resident, and not by reason of any act or failure to act by the grantor while such resident, and not because of any privilege granted, or power of nullification withheld, by the State of New Jersey. It is clear therefore that, notwithstanding the opinion includes considerable discussion as to the circumstances in which a state has the constitutional right or power to impose a transfer tax, the decision does not in any wise hold, and cannot be deemed authority for the principle that, a transfer of property located in this state, made by an owner domiciled in this state, cannot validly be taxed by this state if that transfer is made in another state.
In the other case cited by appellants, — Cutts v.Najdrowski, supra, — the factual situation was that L., a New Jersey resident, who owned a bank deposit standing in his name in a New York bank, caused the account to be changed to the credit of "L. in trust for J." The question was whether this act of L. constituted or accomplished a valid transfer to J. of the ownership of the account. The actual decision was that under the law of New York it did constitute such valid transfer; and that the question of the determination of the nature, validity and effect of the transaction was one which was governed and controlled by the law of the State of New York. It does not appear from the opinion what the act of transfer was nor, — except by possible implication, — that it was made in New York; and it is not clear from the opinion whether the reason for holding that the law of New York controlled was because the act of transfer was made in the State of New York, or because the court found that the property transferred, (notwithstanding it was intangible, — a chose in action), had a situs in New York, or both. All this however is immaterial. So far as concerns our present inquiry, the decision does not in any wise hold nor purport to hold that the State of New Jersey did not have the power to tax that transfer, — does not have the power to tax a transfer of intangibles owned by a New Jersey resident where the act of transfer is performed in New York. The most that it holds is that the nature, effect and validity of an act *Page 201 
of transfer performed in New York is to be determined by the law of New York.
Applying that holding to the instant case simply means that the nature, effect and validity of the trust deed here being considered, is to be determined by the law of New York (where it was executed and delivered). There is however no controversy as to the nature, effect or validity of the deed. Concededly it was a valid deed and comprised and effected a transfer of the legal title to the trustee and transfers of the equitable interests to the beneficiaries as therein specified. (No proof was in fact made as to the law of New York in this regard, and hence it is presumed that that law is the same as the law of this state.) The question here is whether those transfers made by an owner-grantor domiciled in New Jersey, are beyond the power of New Jersey to tax, simply because they were made in New York. The Cutts case is in nowise authority one way or the other.
(In Hasbrouck v. Martin, 120 N.J. Eq. 96,183 Atl. Rep. 735, cited by respondent, there was no question raised by the parties nor considered by the court as to the power of this state to impose the tax. It cannot therefore be deemed authority one way or the other, as to the present dispute.)
On the other hand, in Carr v. Edwards, *84 N.J. Law 667,87 Atl. Rep. 132, a tax was levied by New Jersey in respect of the testamentary transfer of the estate of a non-resident testator which included stocks in New Jersey corporations, and it was held that the law of New Jersey controlled the right of succession to such property of a Massachusetts decedent as had its situs in this state, and that our Transfer Inheritance Tax act intended to, and did, tax that transfer of that property. It is a determination therefore, by our highest court, that the state of the situs of property has the right to tax the transfer of such property, notwithstanding that the act effectuating transfer, (in the Carr case the Massachusetts will) occurs outside of this state. In the instant case the act of transfer (the execution of the deed of trust) occurred in New York but the property thereby transferred (being intangible personalty) had its situs, as we have seen, in the domicile of its owner — New Jersey. *Page 202 
A final and controlling authority on this point is the determination of the United States Supreme Court in Curry v.McCanless, supra. The court there said (p. 366), that the jurisdiction of a state to impose upon the owner of intangibles a tax on the use and enjoyment of rights therein, measured by their value does not depend on any factor other than the domicile of the owner within the taxing state; and again, (p. 370), that inasmuch as the state of domicile of the owner of intangibles may lawfully tax such intangible property in the hands of such owner, "we perceive no ground for saying that the Fourteenth Amendment forbids the state to tax the transfer of it or an interest in it to another merely because the transfer was effected by decedent's testamentary act in another state." This obviously excludes any necessity that the act of making the transfer must be performed in the taxing state. It can make no material difference in this regard whether the act of transfer be by will or by deed.
It is deemed therefore that the fact that the deed of trust in the instant case was executed and delivered in New York, constitutes no ground for holding the present tax invalid.
There is no greater force to the contention of appellants that the present tax is invalid because of the fact that the deed of trust was made to a trustee which was a corporation of New York and located and doing business solely in New York, and the transferees of the equitable interests were non-residents. The statute contains no such limitation, and no authority whatever is submitted by appellants. No logical basis for such a contention can be perceived.
Neither is it at all material to the present issue, that the deed of trust provides that it shall be construed according to the law of New York. The mere fact that the deed contains that provision does not deprive New Jersey of the power and right to tax the transfers therein provided. It might be that if, construed according to the law of New York, that deed was invalid or the transfers therein provided were invalid or were of a different nature and effect than if construed according to the law of New Jersey, the right of New Jersey to tax under the provisions of our present statute might be affected; but no such situation exists. There is no claim whatever that *Page 203 
there is any difference under the law of New York, as to the validity, nature and effect of the deed of trust or the transfers therein specified, than under the law of New Jersey.
We come now to the contentions more strongly stressed by appellants, — i.e., (a) that at the time the deed was made the property thereby transferred to the trustee was located outside the territorial boundaries of New Jersey and so continued at all times thereafter, and hence New Jersey had no power to tax the transfers made by that deed; (b) that the interests given to the sons were contingent and did not vest until the grantor's death, and hence that no transfer to the sons (being the transfer on which the present tax was levied and assessed) took place until the death of the grantor; (c) that at the time of grantor's death he was not the owner of the property transferred by the trust deed and hence that property was not located in New Jersey and therefore New Jersey had no power to tax that transfer thereof.
First as to the situs of the property comprised in the trust deed, at the time of the making of that deed. That property, as has been said, was comprised entirely of intangibles, — securities, — owned, both as to legal title and beneficial interest, by the grantor, but the paper evidences of which were in the custody and possession of a New York corporation, (the same one named as grantee in the deed), as agent of the grantor, and which had so acted as such agent for some considerable time, keeping them in safe custody, collecting the income for grantor and from time to time making sales and purchases as directed by the grantor.
It has been said in divers cases that the legal situs of intangibles, for the purpose of taxation, is the state of domicile of the owner, — this on the basis of a convenient fiction by which, in analogy to the principles applicable to the taxation of tangibles, a physical situs has been attributed to intangibles which in fact do not have, and cannot have, a physical situs.
The actual basis for taxation in respect of intangibles is the control over the owner thereof by the state in which such owner is domiciled, — and the duty of such citizen to contribute to the support of the government of his state. But, *Page 204 
whatever the theory, it is certainly firmly established that the state of domicile of the owner of intangibles has the power and the constitutional right to impose on such owner "a tax on the use and enjoyment of rights in intangibles, measured by their value." Curry v. McCanless, supra, at pp. 366, 367, 370.
And this includes the right to tax the transfer of intangible property or of an interest therein, whether such transfer is effected by an act in that state of domicile or an act in some other state. Id., p. 370.
 Hopper v. Edwards, 88 N.J. Law 471, 96 Atl. Rep. 667, cited by appellants, of course could not prevail over Curry v.McCanless, supra, but in fact it is in nowise authority for the proposition that the state of domicile of the owner has no power to tax such transfer where the paper evidences are located in another state. It decides, at most, (i.e., assuming that the property involved in the transfer there under consideration was intangible property) that New Jersey, where the evidences of the intangibles were located, could validly tax the transfer of the intangibles, notwithstanding the owner-transferor of the intangibles was domiciled in New York, and notwithstanding New York may have validly levied a tax on the same transfer. In other words, it decides that, under the circumstances of the instant case, New York can validly tax, but it does not decide that New Jersey cannot validly tax.
It has been held in a number of cases (see those cited inCurry v. McCanless, supra, at p. 368) that where an owner of intangibles who is domiciled in one state but has carried on business in another state and in so doing "established a businesssitus" in such other state of some or all of his intangibles, tax may be imposed by the state of such "business situs" in respect of such intangibles. Appellants contend that such was in fact the situation in the present case, — that the grantor had established, prior to the execution of the trust deed, a "business situs" in New York for the intangibles conveyed by that deed, so that they were taxable by New York and were not taxable by New Jersey. This contention is unsound.
In the first place it may be doubted that the evidence in *Page 205 
this proceeding establishes that any such "business situs" had been acquired by any of the intangibles conveyed by the deed of trust, as to enable New York to tax. All that the evidence shows is that the paper evidences of ownership of the intangibles had been for some time prior to the deed in the physical possession of an agent of the grantor in New York, who had kept them in safe custody for the owner, collected the income, and from time to time made certain sales and purchases as such agent.
In any event, this same situation existed in the recent case (1939) of Pearson v. McGraw, 308 U.S. 313, and it was held that the state of domicile of the owner of the intangibles had constitutional right and power to tax a transfer of the intangibles made by the owner aforesaid. Obviously, then, it must have been deemed by the court either, (1) that the intangibles had acquired no such business domicile as to enable tax to be imposed by the state where the evidences of the intangibles were located, or, (2), that the state of domicile could tax, notwithstanding the other state also had power and right to tax.
No case is cited by appellants, nor has come to the attention of this court, holding that the state of domicile does not have power and right to tax where a "business situs" has been acquired by intangibles such as to give the state of that situs
the power and right to tax. On the contrary, the Supreme Court of the United States says in Curry v. McCanless, supra, at p.370, "This court has never denied the constitutional power of the trustee's domicile" (the trustee being the owner of legal title to intangibles) "to subject them to property taxation" and "we perceive no ground for saying that the Fourteenth Amendment forbids the state" (of that trustee's domicile) "to tax the transfer of it" (the intangible property) "or an interest in it * * *." And again, at p. 368, — "it is undeniable that the state of domicile is not deprived by the taxpayer's activities elsewhere, of its constitutional jurisdiction to tax, and consequently that there are many circumstances in which more than one state may have jurisdiction to impose a tax and measure it by some or all of the taxpayer's intangibles." The factual situation *Page 206 
in that case was that an owner domiciled in Tennessee had conveyed to an Alabama trustee legal ownership of a trust fund of intangibles (for her own benefit for life) reserving to herself the power to dispose of the trust fund by her will, — which she did. The court held that both Tennessee and Alabama had power and right to tax the transfers made by that Tennessee will.
Again in Graves v. Elliott, 307 U.S. 383, a Colorado citizen transferred intangibles to a Colorado trustee by deed of trust, reserving power to revoke. The grantor later became domiciled in New York and died without revoking. Colorado levied a tax on the transfer occurring at death, (as of course Colorado might lawfully do, under the authorities hereinbefore mentioned, — being the state of domicile of the owner of legal title to the intangibles). It was held that New York also might lawfully levy tax on the transfer which occurred at the death of the grantor consisting of the relinquishment of the power to revoke, — that right of revocation being a potential source of wealth to her and having the attributes of property, and being an interest owned by her which she transferred or relinquished at her death, she being then domiciled in New York.
Although it is thus held by the United States Supreme Court that there is no constitutional prohibition against such "double taxation," it may be noted that in the present instance New York has not sought to impose tax on the transfers here under consideration.
It is further to be noted that the highest court of this state has held that this state may validly impose a tax upon intangibles owned by a corporation domiciled in this state, notwithstanding those intangibles have acquired a "businesssitus" in another state. Newark Fire Insurance Co. v. StateBoard, c., 118 N.J. Law 525, 193 Atl. Rep. 912; affirmed,*120 N.J. Law 224, 198 Atl. Rep. 837. This decision was affirmed by the United States Supreme Court, 307 U.S. 313, but that court was equally divided as to the ground of affirmance. However the decision of our highest court, not overruled by the United States Supreme Court, is of course controlling here. *Page 207 
The execution and delivery of the deed of trust in the instant case effected a transfer of the legal title in the intangibles, by and from the New Jersey domiciled owner-grantor to the New York domiciled trustee, and also a transfer, at the same time, of an equitable interest of contingent remainder therein, to the two sons. Under the authorities cited, New Jersey had the power and constitutional right to tax either or both of these transfers.
The tax here appealed was levied and assessed on the transfers to the sons. Appellants say that these transfers, being contingent, did not occur until the happening of the contingency and that New Jersey had no right or power to tax them because at that time New Jersey was not the state of domicile of the owner of the intangibles, — ownership of the legal title being then in the New York trustee.
It may be here stated that it seems clear that if the state of domicile of the owner-grantor of intangibles has the constitutional power to tax the transfer of the legal title to those intangibles, it must likewise have the power to tax the transfer of any lesser legal interest than absolute ownership, and to tax the transfer of equitable interests as well as legal interests therein. No logical basis for any differentiation in this regard can be perceived. If the transferor owns the complete and absolute, legal and equitable title in this intangible personalty (as he did in the instant case), then he owned each and every interest therein less than the full and complete legal and equitable title; and since the whole and complete ownership was that of intangible property, every lesser part or interest would also necessarily be intangible property, and the state of domicile of such owner-grantor can constitutionally tax the transfer of any partial legal or equitable interest in the intangibles just as well as it can tax the transfer of the complete legal and equitable title.
That the transfers to the two sons were contingent is true; and that those transfers did not become complete until the happening of the contingency is also, necessarily true; but thatno transfer (to the sons) occurred until the happening of that contingency is not true. It cannot be controverted that therewas a transfer of interest from the owner-grantor *Page 208 
to the two sons; that it was made by the owner-grantor; and that the only act of the owner-grantor in making that transfer was the execution and delivery by him of the deed of trust. That deed was irrevocable, and after its execution and delivery there was no act by the grantor, and no failure to act by him, which in any wise did, or could, have any operation or effect in effectuating or preventing the transfer. By the deed he made a transfer of the interest in remainder, and thereafter he had no control whatever over that interest. Thereafter that interest must necessarily vest, at his death, in one or other of the alternative contingent remaindermen, — and that by operation of the deed which he had made. It may be said that the transfer was a continuing affair, incomplete until his death and completed at his death; but it is inescapable that he made the transfer; and that he made it at and by his execution and delivery of the trust deed; and that that execution and delivery was the only
thing he did in making the transfer.
Since it must be conceded that a transfer to the sons did occur; that it was effected solely by the trust deed; that that deed was made solely by the owner-grantor; that from the moment that deed was executed and delivered, it and the transfers therein and thereby made were utterly beyond any and all power of the grantor to revoke, amend or in any wise control, it necessarily follows that the transfer of the equitable remainder was made by the owner-grantor and that it was made by him at the time he executed and delivered the deed; and, since at that time he was domiciled in New Jersey, New Jersey has the right to tax that transfer, notwithstanding the interest so transferred did not vest in the particular beneficiary until the grantor's death.
At the time the grantor performed the only act (positive or negative) performed by him in the making of the transfer, he had the legal title to the intangibles, and he was domiciled in this state. But more than this, — the transfers upon which the present tax has been levied were not transfers of the legal title: they were transfers of interests of equitable remainder, and those interests were intangible property, and hence their transfer was taxable in the state of grantor's domicile even *Page 209 
if we should assume that the legal title to the securities was in the New York trustee. Suppose grantor had made a deed of trust conveying the legal title to the securities to the New York trustee in trust for himself, and had thereafter made a deed conveying the equitable remainder to the sons. That equitable remainder would have been intangible property owned by the grantor and would have been taxable either under a property tax or a transfer tax by the state of his domicile. This is precisely the situation, and basis for taxation, in those cases where a grantor has made a revocable deed of trust and died without revoking. In such case the grantor's right of revocation and re-acquiring the property constitutes property of the grantor, — and obviously intangible property, — a transfer of which occurs by the relinquishment or termination thereof at the death of the grantor without revocation. And where such a transfer (by relinquishment or termination) occurs at death, it is constitutionally taxable by the state in which the grantor is domiciled at death. Kings County Trust Co. v. Martin, infra;Graves v. Elliott, supra; Curry v. McCanless, supra.
As a matter of fact the grantor continued to be domiciled in New Jersey at all times thereafter until his death — although it is deemed that this fact is not material. The grantor's domicile at the time of his death would be material if, and only if, he had reserved to himself any power of revocation or control over this equitable remainder interest (as in such cases as Graves
v. Elliott, supra, and Kings County Trust Co. v. Martin,121 N.J. Law 290, 2 Atl. Rep. 2d 187), — but this he did not do.
By the deed of trust he made an irrevocable transfer of the equitable remainder Although the identity of the particular beneficiaries in whom it would vest was not specified and would not be known until his death, nevertheless it must vest insome of the contingent beneficiaries named in the deed (for the final, contingent, substitutionary remaindermen therein specified are the heirs at law and next of kin of the grantor). The interest must pass under and by the deed, therefore; it cannot pass under his will or by intestate succession. The transfer is therefore made by the deed. *Page 210 
New Jersey has the right to impose tax on that transfer, for the reasons hereinbefore stated; and New Jersey has imposed such tax, by the terms of our statute. It will be noted that the statute imposes the tax on the transfer of any interest in property, whether the property is situate within or without this state, — where the transfer is made by a resident of New Jersey (and is by will, intestate succession or by inter vivos
conveyance made in contemplation of death or intended to take effect at or after death). See the statute, § 1, first paragraph, and § 26. Also, in the case of an inter vivos (or testamentary) transfer comprising an estate or interest contingent or defeasible in character, the property in which such interest is created is to be appraised immediately upon the occurrence of the making of the instrument of transfer, although the tax on the transfer of the contingent or defeasible interest is not to be levied and assessed until the happening of the contingency. See § 3. The tax is on the transfer at the time it is made, though it may be not payable, or even assessable until a later time. Cf.Renwick v. Martin, 126 N.J. Eq. 564, at pp. 578-9,10 Atl. Rep. 2d 293; City Bank Farmers Trust Co. v. Martin,127 N.J. Eq. 492, 13 Atl. Rep. 2d 852; and Wimpfheimer v.Martin, 127 N.J. Eq. 587, 14 Atl. Rep. 2d 59.
Appellants rely upon the decision in Carter v. Bugbee,*92 N.J. Law 390, 106 Atl. Rep. 412, as establishing their contention that in the case of a conveyance of a contingent interest which does not vest until the death of the grantor, no transfer occurs until the happening of that contingency and the consequent vesting. That case dealt with the validity of a tax levied under our statute on a transfer of equitable interests in contingent remainder, made by a non-resident of this state in and by an irrevocable deed of trust, comprising shares of stock of New Jersey corporations. It is true that in that opinion it was said, (p. 393) that "there could be no transfer" of the title to the estate in contingent remainder until the occurrence of the contingency, — but the court was not there concerned with, nor considering, whether or not any taxable transfer, or taxable step in a transfer, occurred at and by the execution and delivery of the trust deed, and in *Page 211 
all probability did not intend to say or to be understood as saying that no taxable transfer or step in a transfer occurred at and by the making of such deed. Furthermore, even if the court did intend its statement to be taken literally and completely, such a broad statement was not necessary to the actual determination as to taxability there made. It was not necessary to go any further than to hold that the transfer did not become complete until the happening of the contingency and that that completion, or that transfer as and when so completed, constituted a transfer at the time of such completion which was taxable and intended to be taxed by the provisions of our statute relating to transfers by non-residents. Consequently so much of the statement in the Carter case as was not necessary to the decision there made, and as is contrary to the generally accepted principles of law, is to be regarded as dictum and not as controlling in the determination of the present case. Cutts v.Najdrowski, *123 N.J. Eq. 481, at p 482, 198 Atl. Rep. 885.
Although the case of MacClurkan v. Bugbee,*106 N.J. Law 192, 150 Atl. Rep. 443, is not specific authority as holding that where transfers are made by deed of trust such as in the instant case, a transfer of the contingent equitable remainder occurs at the time of the execution of that deed, which is subject to the operation of our statute, it would seem that there can be little if any doubt, from what was said by the court in that case, that such would have been so held, if that had been the question then before the court.
The facts and conclusions in the MacClurkan case have hereinbefore been set forth in connection with another point in the argument, but it may be added here, in connection with the present point, that the decision holds that where an irrevocable trust deed is made conveying intangibles to a contingent beneficiary, the transfer (from the stand-point of our tax statutes) is made at and by the execution of the trust deed and that if the grantor be not at that time a resident of New Jersey, there is no transfer made taxable under the terms of our statute, notwithstanding that at the time of the happening of the contingency which vests the contingent remainder, such grantor has become and is domiciled in this state. It *Page 212 
will be observed therefore that it is essentially in contradiction to the earlier case of Carter v. Bugbee, if that case is to be understood as holding that no transfer occurs until the happening of the contingency, where a contingent remainder is given by irrevocable deed of trust.
If the provisions of the deed of trust herein involved failed to specify a beneficiary for each and every possible contingency, so that there was a possibility that the gift of remainder might fail (because of failure to vest in any of the specified contingent beneficiaries), it might be argued that no transfer of that remainder occurred until the happening of the contingency; that until that time the vested ownership of that remainder continued to reside in the grantor and would never pass from him by operation of the deed unless at that time some one of the specified contingent beneficiaries was alive to take; that if at that time no such beneficiary were alive to take, the remainder would not pass at all by the deed but would pass by the grantor's will or by intestate succession. Perhaps, indeed, it might be argued that even under the actual provisions of the present deed, the ownership of the remainder remained vested in the grantor until the happening of the contingency, because there was no provision in that deed for any prior vesting — not even a defensible vesting; that therefore no transfer, — because no completion of the transfer, — occurred until the actual vesting at the death of the grantor.
But even if such a view be accepted, it still remains true that the equitable remainder interest was intangible property; and if it be deemed that the grantor was still the owner thereof until the happening of the contingency and did not transfer it until that time, nevertheless at that time he was still domiciled in New Jersey, and this state has the power and constitutional right to tax that transfer because, as hereinbefore shown, it has such right and power to tax the transfer of intangible property, by the owner thereof, if such owner be then domiciled in New Jersey. The fact that at the time of that transfer of the intangible interest of equitable remainder in the intangible securities the legal title to the latter was in the New York trustee, does not prevent the taxability by *Page 213 
New Jersey of the transfer, by the New Jersey citizen, of that intangible equitable remainder interest still owned by him.Curry v. McCanless, supra; Graves v. Elliott, supra.
It is concluded therefore that the tax in question must be affirmed, both as to that portion based on the annuity refund transfers and as to the portion based on the transfers by trust deed. *Page 214