HARRY W. GRELL, EXECUTOR OF THE LAST WILL AND TESTAMENT OF C. AUBREY NICKLAS, DECEASED, PROSECUTOR, v. WILLIAM D. KELLY, STATE TAX COMMISSIONER, DEFENDANT.

HARRY W. GRELL, EXECUTOR OF THE LAST WILL AND TESTAMENT OF C. AUBREY NICKLAS, DECEASED, PETITIONER-DEFENDANT, v. FRANK E. WALSH, DIRECTOR, DIVISION OF TAXATION AND FINANCE, SUCCESSOR OF WILLIAM D. KELLY, STATE TAX COMMISSIONER OF THE STATE OF NEW JERSEY, RESPONDENT-PROSECUTOR.

Argued January 16, 1945—Decided February 7, 1945

Before Justices CASE, BODINE and PORTER.

For the estate of C. Aubrey Nicklas, deceased, *Scammell, Knight & Reese (Scott Scammell).*

For the taxing authorities, *Walter D. Van Riper,* Attorney-General, and *William A. Moore.*

The opinion of the court was delivered by

CASE, J. The main facts and the issues appear in the opinion of the Prerogative Court reported in 134 *N. J. Eq.* 593. The matter is before us on two writs of *certiorari*, the first of which is prosecuted by Harry W. Grell, executor of the last will and testament of C. Aubrey Nicklas, deceased, and the second by Frank E. Walsh, director, Division of Taxation and Finance of the State of New Jersey.

Under the first writ the decedent's estate challenges so much of the decree in the Prerogative Court as supports the action of the taxing authorities in assessing 450 shares of the capital stock of George W. Rogers Construction Company at $442.59 per share. The stock was reported at $150 per share, but the prosecutor agrees that the valuation should be increased to $175 at which price sale was later effected. The difference between the figure conceded by the estate and that contended for by the tax department lies chiefly in the appraisal of good will. The department, applying a formula to the statement of the company's finances, decided that a "good will" item of $230,426.20 should be included in the assets. The amount of the assets, thus supplemented and divided by the number of shares outstanding, gave to each share the book value of $442.59, the figure upon which the estate tax is calculated.

The mandatory statutory direction (*R. S.* 54:34–5) is that "taxes imposed * * * shall be computed upon the clear market value of the property transferred." We think that the legislature used those words in their ordinary meaning. The tax is to be computed upon *value;* upon *market* value; upon the *clear* market value. Some kinds of property always have a market and a quickly ascertainable price in that market; as for instance certain widely distributed securities traded daily in large volume on the floor of an exchange. Other classes of property have a "slow" but nevertheless a definite market; and real estate properties are ordinarily such. Still other classes of property, such as stock holdings in small, closely held corporations, present a difficult problem. But the difficulty is not only upon the tax appraiser; it is also upon those who own the equity and wish to sell it.

The problem may not be solved by disregarding it. It can be very perplexing; so perplexing that the Prerogative Court in such a case (*In re Moore,* 104 *N. J. Eq.* 400) was led to declare that "the clear market value is impossible of ascertainment"—an observation which we hesitate to accept for the reason that it seems to exclude the mandatory statutory scheme of appraisal.

Those whose duty it is to assess property subject to the tax have many adverse elements with which to contend: innocent transactions in which the participants unconsciously involve themselves or their estates in tax obligations; ingenious devices whereby persons who do not intend to violate the law nevertheless squeeze tightly in the loopholes; venal and fraudulent schemes by those who deliberately endeavor to conceal taxable transactions under a false cover. The courts are alert to thwart unlawful evasions, *Koch* v. *McCutcheon,* 111 *N. J. L.* 154; but the courts, as well as the taxing authorities, must act within the law. Through a period of years it was the position of the Prerogative Court that it should not function to weigh the evidence on appraisals or to substitute its judgment as to the values for that of the taxing office. *In re Pierce's Estate,* 89 *N. J. Eq.* 171; *In re Hall,* 94 *Id.* 398; *In re Moore, supra; Spalding* v. *Martin,* 119 *Id.* 603. But the doctrine was renounced by that court in *Kellogg* v. *Martin,* 130 *Id.* 338; and rightly so, because, while the state must be protected and tax evasions should not be tolerated, there is a duty to the individual that is equally solemn. *Mac Gregor* v. *Martin,* 126 *N. J. L.* 492, 501.

However difficult it may be to discover the market value of an asset, such a discovery must, under the statute, remain the goal. What the property may be worth to the seller or what it may be worth to the buyer is important chiefly as a criterion to help in establishing the market value. The fruition of a market is the selling; and what better proof of market value can there be than the selling, honestly accomplished under all of the incidents that go to make a free and fair market, at that figure? Given an actual and forthright sale in such a market there should be little to search for beyond making sure of the *bona fides* thereof, and ascertain-

ing the actual price and whether the seller had exhausted the possibilities of the market for a better price. Elements of value, including good will, have their place in helping to that end; but clear market value, when ascertained, becomes the true appraisal figure although a particular element, even good will, taken by itself, may cause that figure to appear too low or too high.

The George W. Rogers Construction Company is in the business of building and repairing docks, chiefly docks of the larger railroads in New York Harbor and vicinity. Most of the business is obtained, not on a competitive basis, but at an agreed figure without bidding. The corporation was organized by the first George W. Rogers, and it attained success largely because of his personal standing with the patron companies. Later Nicklas bought into the corporation and became a considerable factor in its activities. As the years passed George W. Rogers, II (son of the founder), became the dominating figure; he gradually built up his stockholdings to one-half of the outstanding 1,000 shares of capital stock and, after the death of Nicklas, became the owner of the majority of the stock by the purchase of a small additional block from one Thomas Temple. Every reasonable effort was made by the executor of the Nicklas estate to sell the stock held by the estate to outside interests. But the business had been built up and maintained by the force of personal contacts, and in the continuance of that policy it had come under the management of the younger Rogers who, by reason of his personal attributes, his name, his relationship to the founder, and, finally, because of his ownership of a majority of the stock, came into full control. It was impossible to make profitable sale of the Nicklas stock, a minority holding, to third parties. After nine months of persevering effort the stock was sold to George W. Rogers, II, at the best price obtainable. The executor argues for an appraisal at that figure.

At the oral argument it was conceded on behalf of the tax department that the transaction involved no bad faith. No contention was advanced that the stock could have been sold at a larger price. By the sale, all of the interests of the

deceased and of his family in the corporation were ended. The pertinence of this observation is that although frequently, as *e. g., In re Bottomley*, 92 *N. J. Eq.* 202; *In re Deutz*, 105 *Id.* 671; *Farmers' Loan and Trust Co.* v. *Bugbee*, 6 *N. J. Mis. R.* 415; *Koch* v. *McCutcheon, supra; Renwick* v. *Marlin*, 126 *N. J. Eq.* 564, the disputed transaction involves some actual or potential advantage, other than the sale price, to the decedent or his relatives or his family connections, no such element exists in this case. The sole interest of the executor and of the Nicklas family was to get the best possible price. It would be contrary to the statute to tax it at more than that.

We think that upon the facts of the case the clear market value of the estate holdings in the George W. Rogers Construction Company was the sale price of $175 per share. The stock may have been worth more than that to Mr. Nicklas in his lifetime and under his own management. It may now be worth more than that to Rogers. But there was no way of getting more from any purchaser. What is being assessed is the asset, as held by the estate, at the market price, the tax upon which is payable both immediately and ultimately from the estate funds.

We conclude that the decree below should be modified to provide for an appraisal of the stock at $175 per share.

Under the second writ the director alleges that the Prerogative Court erred in finding that the "agreement between the Empire Construction Company and the decedent regulating the transfer of his stock holdings in said company did not effectuate a transfer of property donative in character which was intended to take effect in beneficial possession and enjoyment at or after his death within the intendment of the inheritance tax laws of this state and that the court below erred in holding that the fair market value of the decedent's stock in that company could not, for inheritance tax purposes, exceed the price fixed by said agreement." The agreement referred to was made by the decedent eight years before his death and was for the sale of the stock at a price to be determined by the application of a specified formula to the balance sheets of the company, and the conclusion reached by the Vice-

Ordinary was that the agreement had not been shown to be one intended to take effect at death within the meaning of our statute. It appears to us that the decision was just and that the reasons for the same were soundly stated. We affirm the decree in that respect upon the pertinent portion of the opinion below.

The decree below will be modified in accordance with the foregoing opinion. Costs are not allowed.