Since our heritage of life depends upon a tenancy from moment to moment, some contemplations of ultimate death, however extemporaneous, will presumably creep into the minds of everyone. I would suppose that one who has never conceived or cogitated in some jiffy an expectancy of eventual physical dissolution accepts a pathological faith in the occurrence of a miracle. True, there are those who apparently theorize that they have not exhausted life until they are convinced that life has exhausted them. But, however distant the date may seem to them to be, I fancy that they nevertheless comprehend that some day they will arrive at Jordan's bank.
And so, in the consideration of these inheritance tax appeals, I intrepidly confess that the protestations so often arrogated that the individual never entertained any introspections of prospective death are to me unimpressive. The contrary can in a reasonable measure be safely conceded by the appellants in these cases, because the mere circumstance that the decedent possessed an intellectual foresight capable of encompassing the inevitable eventualities of the future does not of itself render his or herinter vivos transfers necessarily subject to transfer inheritance taxation under the terms of our statute.
The determinant of the taxability of an inter vivos transfer as in contemplation of death is the motive, the intent and purpose of the transferor. The premonitory consciousness of premature or imminent death is often diagnostic of the essence of the motive. The object of the statute is to tax testamentary and intestate transfers and also inter vivos transfers which are in fact makeshifts employed to effectuate a purpose normally accomplished by will. Squier v. Martin, 131 N.J. Eq. 263;24 Atl. Rep. 2d 865. Accordingly, the facts of each case must be examined in the process of inclusion and exclusion.MacGregor v. Martin, 126 N.J. Law 492; 20 Atl. Rep. 2d427.
The present appeal does not seem to me to tender an issue of any special perplexity. An abridgement of the factual story will adequately fulfill the object of this announcement of my decision. *Page 183 
On December 14th, 1944, one Elizabeth Guthrie Taylor, a resident of East Orange, Essex County, New Jersey, died testate at the age of 72 years. The net taxable estate transmitted by her will was valued at $287,319.10. On December 6th, 1946, a transfer inheritance tax assessment was formulated by the taxing authorities which additionally enveloped certain property alleged to have been transferred by the decedent on March 5th, 1943, in contemplation of death. The incorporation of the assets comprising the inter vivos assignment in the tax assessment constitutes the primary subject-matter of this review.
A transcription of the significant paragraphs of the assignment of March 5th, 1943, will be illuminative:
"KNOW ALL MEN BY THESE PRESENTS,
That
"Whereas, WALTER FRANKLIN GUTHRIE departed this life on the 31st day of December, 1942, resident in the City of East Orange. County of Essex and State of New Jersey, leaving a last will and testament dated the 9th day of July, 1929, which said will was duly admitted to probate before the Surrogate of the County of Essex, New Jersey, on the 21st day of January, 1943, and letters testamentary thereon were issued by said Surrogate on said date to GUARANTY TRUST COMPANY OF NEW YORK, the executor named in said will; and
"Whereas, in and by Paragraph First of his said will the said WALTER FRANKLIN GUTHRIE did provide as follows:
"`First: I give, devise and bequeath all of my property and estate, real and personal, and wherever the same may be situated, in equal shares, to my sisters ELIZABETH GUTHRIE TAYLOR of East Orange, New Jersey, and MAY GUTHRIE GOODWIN of Grand Junction, Colorado; if either of my said sisters shall predecease me, then I give, devise and bequeath my said estate to the survivor;'
and
"Whereas, said ELIZABETH GUTHRIE TAYLOR and MAY GUTHRIE GOODWIN, the two sisters of the testator named in the aforesaid will of the said testator, both survived him, and became entitled in equal shares to his residuary estate; and
"Whereas, the said ELIZABETH GUTHRIE TAYLOR and ELMER Z. TAYLOR, her husband, are childless, and both are fortunate in their financial circumstances, the said ELIZABETH GUTHRIE TAYLOR having, in her own right, ample estate to provide for her own wants, and her said husband having substantial resources of his own, so that there will be no occasion for the said ELIZABETH GUTHRIE TAYLOR to resort to her share of her said brother's estate so as aforesaid bequeathed to her, either for her own benefit or for that of her husband; and
"Whereas, the financial circumstances of the said MAY GUTHRIE GOODWIN are less ample, and the said ELIZABETH GUTHRIE TAYLOR *Page 184 
desires to convey and assign her interest in the said estate of WALTER FRANKLIN GUTHRIE, deceased, to MAY GUTHRIE GOODWIN, her said sister, in order that said MAY GUTHRIE GOODWIN may have the benefit of additional independent resources; and
"Whereas, the said ELIZABETH GUTHRIE TAYLOR is confident that such assignment will effectuate the preferences of her said brother, WALTER FRANKLIN GUTHRIE, as expressed by him in conversations between them, after the making of said will, concerning the disposition of his property and estate;
"Now Therefore, the said ELIZABETH GUTHRIE TAYLOR, of the City of East Orange, County of Essex and State of New Jersey, in consideration of love and affection towards her said sister, MAY GUTHRIE GOODWIN, of Grand Junction, in the County of Mesa, State of Colorado, and of the sum of One Dollar ($1.00) to her paid by said sister, has given, granted, conveyed, transferred, assigned and set over, and by these presents does give, grant, convey, transfer, assign and set over to the said MAY GUTHRIE GOODWIN, all the undivided one-half interest of the said ELIZABETH GUTHRIE TAYLOR in and to the said residuary estate of WALTER FRANKLIN GUTHRIE, deceased, and all the right, title and interest in and to the said residuary estate that she, the said ELIZABETH GUTHRIE TAYLOR, now has, or hereafter may have, claim, demand, own, or be, or become, vested with, or entitled to, under, or by virtue of, any of the terms, provisions, conditions, devises and bequests contained in the said last will and testament of the said WALTER FRANKLIN GUTHRIE, deceased, of which said GUARANTY TRUST COMPANY OF NEW YORK is executor as aforesaid."
The value of the interest of Mrs. Taylor in the estate of her brother at the time of his death was determined to be $129,395.25, and the appraisal of the same assets as of the death of Mrs. Taylor is stated to be $211,689.54.
A studious and acute examination of the state of case submitted on this appeal evokes the conjecture that the substantial value of the transfer, the advanced age of the transferor, and the applicable statutory presumption have been the factors which have induced the taxing authorities in pursuit of their customary efficiency to impose the assessment.
Despite the existence of all of those significant and presumptive circumstances, the evidence in my judgment fails to sustain the factual justification of the assessment within the settled interpretation and purview of our statute.
In Squier v. Martin, supra, I stated: "The difficulty normally encountered by the taxing authority in adequately establishing by competent and credible evidence the taxability ofinter vivos gifts is easily perceived. Nevertheless, this *Page 185 
difficulty, so frequently emphasized, cannot logically be taken to inflate the credibility or intensify the weight of the evidence actually adduced in favor of taxability. Enlightened witnesses capable of supplying the pertinent evidence are customarily parties in interest. This exigency probably induced the legislature (1922) to fabricate the pragmatical presumption of a testamentary motive in those cases where gifts are made within two years of death. This presumption, where applicable, serves to place upon the representative of the estate the duty to come forward with contradictory evidence, but at the extremity of the proceeding, the burden reposes upon the taxing authority to establish by the fair preponderance of the specific and inferential facts that the transfer was made as a substitute for testamentary disposition." See, also, Cairns v. Martin,130 N.J. Eq. 313, 328; 22 Atl. Rep. 2d 415.
In the case sub judice the motive of the transferor is not inscrutable and unfathomable, thereby necessitating resort to a purely pragmatic legal presumption. I am aware of the ease with which in these cases some kind of a face can be given to almost every transfer, but the judicial obligation is to interpenetrate the transaction beneath its external aspect and to ascertain the undisguised and genuine motives of the donors. Such has been my endeavor in the consideration of the instant appeal.
In verification of the recitals in the instrument of assignment, I am informed by the uncontradicted evidence that at the time of the inter vivos transfer Mrs. Taylor evidently possessed a personal estate of approximately $290,000. Her husband was and is a person of substantial wealth. His and her resources were already abundantly adequate for their needs. Her younger sister, May Guthrie Goodwin, was less fortunate financially. Mr. Goodwin was engaged in an enterprise only moderately remunerative, and he and his wife resided in a modest home at Grand Junction, in the State of Colorado. Moreover Mrs. Goodwin was not blessed with good health.
The decedent, Mrs. Taylor, her brother Walter, and her sister May continued to be attached by a threefold vinculum *Page 186 
of mutual love and affection. Mrs. Taylor was accustomed in the past to bestow gifts upon her sister. Sympathy is also apt to swell the tide of love.
The brother Walter had expressed his realization of the disparity betwen the economic situations of his two sisters, but the equality of his love for each undoubtedly and indeed naturally as in many such cases promoted the equality of his testamentary dispositions in their favor.
Walter had long manifested his implicit confidence in his sister Mrs. Taylor. During a span of years Mrs. Taylor held his power of attorney pursuant to which she and Mr. Taylor managed his financial affairs. The proofs supply a foundation for the logical inference that Walter anticipated in consequence of his conversations with Mr. and Mrs. Taylor that the latter upon his demise would of her own voluntary accord bestow her superfluous share of his estate upon their sister May and thus accord to her the comforts of a somewhat comparable financial position.
What then were the meditations of the decedent upon the occurrence of Walter's death and upon the reading of his will? She immediately divulged them and at once expressed her desire that the benefactions allotted to her should pass directly to her sister. An event, fateful in character, had occurred which now enabled her to be magnanimous and to confer an immediate financial freedom upon her less prosperous sister for whose comfort and welfare she had always exhibited a most vigilant regard. Walter's will was probated on December 31st, 1942, and on March 5th, 1943, before any distributions had been accomplished, Mrs. Taylor transmitted her beneficial interest to her sister.
In summary, the transfer was an absolute, unconditional, and consummate gift intended by the donor to be immediately possessed and enjoyed by the donee during the life of the donor. "He doubles his gift who gives in time." Cf. Squier v. Martin,supra. The donor did not thereby diminish her own accumulated estate. In reality the gift was taken from the estate of another.Cf. Plum v. Martin, 132 N.J. Eq. 1; 26 Atl. Rep. 2d529. It is not evident that the donor was a tax-conscious person. Cf. Avery v. Walsh, 138 *Page 187 N.J. Eq. 80; 46 Atl. Rep. 2d 912; Johnson v. Zink,140 N.J. Eq. 255; 54 Atl. Rep. 2d 123. Her state of health was not then such as to cause her to believe that death was proximately impending. A state of genuine love and affection is a very potential passion which transcends and ignores the considerations and advantages of tax evasions. Old age may make one less hopeful, but not necessarily less devoted and generous to those whom one loves. I am not persuaded that the gift was intended to be a substitute for a testamentary disposition.
A decree will be advised annulling the assessment. *Page 188