One George J. Busch, Sr., a resident of Newark, Essex County, died testate on June 20th, 1944, at the age of 82 years. Between the year 1937 at the age of 75 and the date of his death seven years later, he transferred directly and indirectly to the natural objects of his bounty by means of inter vivos
assignments assets of the appraised value of *Page 415 
$143,539. One might now infer that he initially underestimated his eventual life expectancy because he thereby so diminished and exhausted his financial resources that during the epilogue of his life he was obliged to borrow money for his support and maintenance, and he died leaving an insolvent estate.
Nevertheless, I am told in the prosecution of the present appeal that it was manifestly erroneous for the taxing authority to determine that such transfers were made by the decedent either in contemplation of death or were in the circumstances intended by him to be transfers designed to become potentially effective in the beneficial possession and enjoyment of the donees only at and after his death and consequently taxable. R.S. 54:34-1, c,N.J.S.A.
One cannot, however, perspicaciously appraise the performance by merely witnessing the silhouette. I adhere to my conviction that: "It is injudicious to assume initially that every relatively large gift made by a donor of advanced age is made in contemplation of death and then survey the evidence solely from that point of view." Squier v. Martin, 131 N.J. Eq. 263;24 Atl. Rep. 2d 865.
Yet, it is irrefutable that the age and contemporary environment of the donor, the proportionate dislocation of his estate accomplished by his inter vivos transfers, and the deliberately selected destinations of his gifts are all relevant and significant factors which merit consideration in the effort to ascertain the intent and purpose of the donor.
It has been my practice and is my preference to compose, if possible, from the available evidence in these cases a biographic commentary upon the qualities of the transferor, his temperament, affections, proclivities, and propensities. A study of such qualities of the individual so often exposes the probable motives that impelled his acts. While I have nonetheless thoughtfully examined and analyzed the evidence in the present cause, the pressure of judicial work at this season obliges me in this instance to express my conclusions in a somewhat summary fashion.
This decedent displayed in the latter stages of his life the virtues of generosity, but it is noticeable that his benefactions *Page 416 
were not exported beyond the family circle. Compare, MontclairTrust Co. v. Zink, 141 N.J. Eq. 401; 55 Atl. Rep. 2d372.
This decedent, having retired from active business, resolved at the age of 75 to organize a corporate receptacle for most of his personal resources. Why? Various reasons might be conjectured, but in this instance the actual and exclusive functions of the corporation under his personal control give utterance to the unmistakable answer.
The corporation was manifestly utilized as a conduit through which the decedent gradually drained off to his beneficiaries the accumulated assets of his own estate. By the retention of sufficient shares of the corporate stock he meanwhile withheld the authority to regulate and control the volume and rapidity of the outward flow of the corporate assets which he alone had donated to the company. Precautiously he established himself in the office of president of the corporation with a salary to neutralize the loss of his income, but the egress of donations ebbed the tide of his stock holdings and of the corporate assets.
The payment of a salary, as such, to the decedent was discontinued in 1942 and a substituted plan was adroitly contrived. Monetary advances were thereafter periodically acquired by the decedent from the corporation which were characterized by a resolution of the company as loans to be ultimately payable out of the decedent's general estate. No interest was paid by the decedent on the so-called loans. However, they had reached at his death the sum of $10,000, and thus constituted a debt sufficient to absorb his last penny. Although he had parted with the title to his home, he continued to occupy it with the indulgence of his donee.
Several of the transfers exhibit a degree of transparency by reason of the indirect and circuitous manner in which they were ultimately consummated. In point are the original and successive assignments by the decedent of the shares of his company to his chosen beneficiaries, followed in some instances by the surrender of the stock donations by his donees to the company in exchange for conveyances to them of parcels of real estate which had been placed by the decedent in the ownership of the corporation. *Page 417 
I do not ignore the significant coincidence that on the same day on which he transferred four of his mortgages to the corporation, the decedent executed his last will and testament. Yes, the testamentary beneficiaries are his children.
Nor can I be unobservant of the fact that although the decedent by means of his transfers ostensibly relinquished the legal ownership of his assets, yet he obviously intended to and actually did retain exclusive supervision and control over them. He maintained for himself the majority of the capital stock of the corporate transferee, and it seems evident that during the succeeding years of his life he recaptured in one way or another all of the accruing income. Cf. Hartford v. Martin, 122 N.J. Eq. 489; 194 Atl. Rep. 800; affirmed, 120 N.J. Law 564;1 Atl. Rep. 2d 13; affirmed, 122 N.J. Law 283; 4 Atl. Rep.
2d 31; Bank of New York v. Kelly, 135 N.J. Eq. 418;38 Atl. Rep. 2d 899; Avery v. Walsh, 138 N.J. Eq. 80;46 Atl. Rep. 2d 912; Ten Eyck v. Walsh, 139 N.J. Eq. 533;52 Atl. Rep. 2d 445. Except in certain instances, it is not apparent that the ultimate beneficiaries of his gifts thereby received any immediate pecuniary advantages therefrom, or that in any instance were they in urgent need of any such benefits.
I have repeatedly held that the object of the transfer inheritance tax statute is to tax not only testamentary and intestate transfers but also inter vivos transfers which as mere substitutes for testamentary dispositions are employed to effectuate a purpose normally accomplished by a will. Squier v.Martin, supra; Dommerich v. Kelly, 132 N.J. Eq. 220;27 Atl. Rep. 2d 871; affirmed, 130 N.J. Law 542; 33 Atl. Rep.
2d 893; affirmed, 132 N.J. Law 141; 39 Atl. Rep. 2d30; Voorhees v. Kelly, 132 N.J. Eq. 230; 28 Atl. Rep. 2d61; affirmed, 130 N.J. Law 61; 31 Atl. Rep. 2d 404;
affirmed, 131 N.J. Law 226; 35 Atl. Rep. 2d 895; Avery v.Walsh, supra.
I shall not undertake specifically to distinguish in their taxable aspects some of the transfers in contemplation of death from others intended to become effective in possession and enjoyment at and after the death of the transferor. Suffice to resolve that in my judgment all of those here assessed *Page 418 
fall within the category of transfers encircled by our taxing statute.
Decree will be advised affirming the assessment.