This is an appeal from the levy of an inheritance tax. The issue is the market value of shares of the capital stock of C.F. Mueller Company. Decedent owned 60% of the stock and four close relatives held the rest of it. There were no sales of stock indicating its market value, except the one sale discussed below. The book value at decedent's death November 10, 1946, was $269.25 a share, or $1,271,937 for his holdings. Average earnings per share for the years 1944, 1945 and 1946 were $89 before providing for Federal taxes. After deducting taxes, there remained an average of $42.10 or $25.95 above 6% of book value. If we take three times that sum as a measure of good will, and add it to book value, we reach $347.10 per share. In February, 1947, three months after testator's death, the executors began negotiations looking to the sale of the stock to the New York University Law School. The negotiations were successful and eventuated in a contract August 28, 1947, for the sale of all the outstanding stock of the Company to the Law School at a price that was equal to $444.66 per share. A sale of all the outstanding stock and not merely decedent's shares, was an essential condition of the deal, for the School had devised a plan whereby, if it became the sole stockholder, the Company would be freed of income tax and the School could reasonably hope for an annual return of 25% on the investment.
The parties have stipulated that the Director, "basing his action on the decision in the case of Grell v. Kelly,132 N.J.L. 450, has valued said shares at $444.66 per share, the sales price thereof on August 28, 1948." The executors ask that the appraisal be reduced to $425.85 per share. This would produce a tax the equivalent of the 80% credit against the Federal estate tax, and would be as advantageous to the executors as a lower valuation. *Page 116 
In Grell v. Kelly the decedent held a large minority interest in a company engaged in the business of building and repairing railroad docks. Every reasonable effort was made by the executors to sell the stock to outside interests, but they found it impossible to make a profitable sale to third parties. After nine months of persevering effort, they sold the shares to the holder of the majority stock at the best price obtainable, $175 a share. The Tax Commissioner assessed the stock at $442.59 per share, namely, book value plus a good will item. The Supreme Court concluded that the shares should have been assessed at the sales price. The court in the Grell case laid down no rule of law to be followed by the taxing authorities except the familiar statutory rule that the tax shall be computed on clear market value as of the date of decedent's death. The decision was based on a finding that the evidence established a market value of $175 a share. The sale was evidence of value as of the date of sale, and the unavailing attempts to effect a sale earlier was persuasive that the shares had no higher value at the date of death.
Let us accept the price paid for the Mueller stock by the New York Law School as strong proof of market value on the date of the sale. It was also a fact that book value at that time was $50 more than at the date of death, and net earnings in the intervening ten months had risen well above the three-year average. These factors which the Director felt constrained to ignore, lead us to find that market value when testator died, was substantially less than it was the following August. The Director will be instructed to reduce the appraisal by $18.81 a share to $425.85 and to reassess the tax accordingly. *Page 117