18 N.J. Super. 56 (1952)
86 A.2d 688
MARY NAZZARO, ROCCO NAZZARO, ATTILIO NAZZARO, ARMAND NAZZARO, ANN HILDEBRAND AND EMANUEL SHAVICK, EXECUTORS OF THE LAST WILL AND TESTAMENT OF ANTHONY NAZZARO, DECEASED, APPELLANTS,
v.
AARON K. NEELD, DEPUTY DIRECTOR, ACTING AS DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1952.
Decided February 5, 1952.
*58 Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.
Mr. Paul Rittenberg argued the cause for appellants (Messrs. Shavick, Rittenberg & Shavick, attorneys).
Mr. William A. Moore, Deputy Attorney-General, argued the cause for respondent (Mr. Theodore D. Parsons, Attorney-General of New Jersey).
The opinion of the court was delivered by JAYNE, J.A.D.
One Domenico Antonio Nazzaro, more generally known as Anthony Nazzaro, a resident of Little Falls, in the County of Passaic, died testate on June 1, 1949, at the age of 68 years. He was survived by a widow, sons, daughters and grandchildren, and also by a former wife from whom he was divorced on April 28, 1933. The decree of divorce embodied provisions by way of alimony for the former wife's support and maintenance.
On April 8, 1941, the decedent executed a trust indenture which contains the following introductory recitals:
"WHEREAS, certain orders heretofore entered in the Court of Chancery of New Jersey on the 28th day of April, 1933, and the 23rd day of April, 1938, provide for the payment of alimony by the party of the second part to the party of the first part, and provide for security for the payment of the said alimony as more fully set forth in said orders; and
WHEREAS, it was agreed that the said orders be modified in accordance with the terms and provisions of a proposed order about to be entered in the Court of Chancery of New Jersey, a copy of which order is annexed hereto and made a part hereof;
*59 NOW, THEREFORE, for and in consideration of the sum of One ($1.00) Dollar, and other good and valuable consideration, and pursuant to the provisions of the order hereinabove described, the parties hereto do hereby agree as follows."
The parties to the agreement were the decedent and his divorced wife, Eugenia DeGise Nazzaro. A quotation of certain selected paragraphs of the agreement will exhibit the characteristics of the trust which are of present pertinency:
"First: The party of the second part agrees to make payment to the party of the first part of the sum of Five Hundred fifty ($550.00) Dollars per month, payable on or before the 10th day of each and every month, commencing with the 10th day of April, 1941, as provided in said proposed order.
Second: The parties hereto do hereby agree to carry out the terms and provisions of said proposed order and of this agreement, which makes said proposed order a part hereof.

* * * * * * * *
Fourth: It is understood and agreed by and between the parties hereto, that the said Domenico Antonio Nazzaro and the Trustees appointed pursuant to an agreement dated April 23, 1938, shall transfer and convey to the said Eugenia DeGise Nazzaro, in fee simple, the property known as the `Anthony Nazzaro Homestead,' at No. 478 Doremus Avenue, in the Borough of Glen Rock, in the County of Bergen and State of New Jersey; and that the said Domenico Antonio Nazzaro shall transfer all, his right, title and interest in and to the household furniture, fixtures and personal property in and about the said premises above described to the said Eugenia DeGise Nazzaro, her heirs, executors, administrators and assigns.
Fifth: It is understood and agreed that in the event of the death of the said Domenico Antonio Nazzaro, the said Trustees or the survivor or survivors of them, shall pay to Eugenia DeGise Nazzaro, out of the said trust, as aforesaid, the sum of Five hundred fifty ($550.00) Dollars per month."
The decedent transferred and assigned to the trustees a corpus of three mortgages having a face value of $26,000, and a parcel of real estate appraised at $75,000, under the following terms:
"(a) That the income and interest on said mortgages, totalling Twenty-six thousand ($26,000.00) Dollars, as aforesaid, and the income and profits from the aforesaid real estate, shall be paid over to the said Domenico Antonio Nazzaro, the party of the second part *60 herein provided that he carries out the terms and provisions of the aforesaid proposed order and pays to the said Eugenia DeGise Nazzaro the sum of Five Hundred fifty ($550.00) Dollars per month during the term of her natural life.
(b) That upon the death of the said Eugenia DeGise Nazzaro, the Petitioner herein, the Trust aforesaid, consisting of the said mortgages or such other substituted securities, together with said real estate, shall be liquidated and converted into cash in such manner as the said Trustees, or the survivor or survivors of them, in their opinion decide is the most beneficial method of liquidation, and that the proceeds thereof and the said Trust shall be divided and distributed in the following manner."
The beneficiaries of the remainder of the trust are children and grandchildren of the dissolved marriage. The terms of the trust agreement were incorporated in a consent order dated April 9, 1941, and filed in the matrimonial action in the Court of Chancery.
It is acknowledged that the decedent thereafter paid the stipulated alimony and received the entire income from all of the corpus of the trust, appropriating also the sum of $18,572.56 which constituted payments made in reduction of the principal of the three mortgages.
The Deputy Director, acting as the Director of the Division of Taxation, Department of the Treasury, resolved that the transfer evidenced by the agreement of April 8, 1941, was one embraced by the terms of R.S. 54:34-1(c) in that it was intended to take effect in possession and enjoyment at and after the death of the transferor and accordingly subject to an inheritance tax assessment.
The corpus of the trust consisting of the three mortgages and the real estate was valued at $101,000. From this amount the respondent deducted the value of the payments to be thenceforth made to Eugenia DeGise Nazzaro, calculated upon the basis of her age, to amount to $47,250.79, leaving a remainder of the value of $53,749.21 upon which an assessment has been levied. The net taxable estate of the decedent is determined to be $374,096.46, and it would seem that the assessment in controversy increases the tax in the sum of $550.87.
*61 A comprehensive exposition of the subject of transfer inheritance taxation in New Jersey embodying references to legislative lineage and a collation of the pertinent reported decisions theretofore rendered is at hand in Squier v. Martin, 131 N.J. Eq. 263 (Prerog. 1942). Citations of later decisions are congregated in Johnson v. Zink, 140 N.J. Eq. 255 (Prerog. 1947), to which may be added: Fidelity Union Trust Co. v. Walsh, 141 N.J. Eq. 181 (Prerog. 1948); Montclair Trust Co. v. Zink, 141 N.J. Eq. 401 (Prerog. 1948); Busch v. Walsh, 141 N.J. Eq. 414 (Prerog. 1948); Lee v. Walsh, 141 N.J. Eq. 418 (Prerog. 1948).
The more recent decisions of the Appellate Division are concordant.
An acquaintance with the adjudications exemplifying the object and purpose of the Transfer Inheritance Tax Act, its breadth and its limitations, persuades us that in the circumstances of the present case the transfer in controversy is not enveloped by the provisions of the statute.
The facts of each case must be examined in the process of inclusion and exclusion. Our Supreme Court has recently reiterated that the test for determining when a transfer takes effect for taxing purposes under the statute is "whether possession or enjoyment of the property is intended to take effect at or after the transferor's death, irrespective of the time when title is to vest. The important question is `whether the shifting of the possession and enjoyment of the subject matter of the succession is dependent upon the settlor's death. Is his death a determinative factor in the devolution of the possession and enjoyment of the estates granted?'" Schroeder v. Zink, 4 N.J. 1 (1950).
It is the intention to postpone until the death of the transferor the succession of the full beneficial enjoyment of the fund that is noteworthy. Was a disposition of post mortem interest intended?
"The propriety of the present assessment is accordingly considered in the form and posture in which it is presented. It is, of course, categorical that a transfer inheritance tax is the creature of statute, *62 and liability to such taxation must reside in the language or plain intendment of the Tax Act. * * *
Whether or not a transfer comes into enjoyment or possession at the transferor's death is a matter of a realistic examination of the shifting of economic burdens and benefits, the actual succession to property. Was it the result of a purpose that the transferee should or might have and enjoy, after the death of the transferor, the property transmitted? Would the transfer have been made in the absence of such purpose?
* * * In its relation to inter vivos transfers, the primary object of the statute is to envelop all those which in reality are chosen substitutes for testamentary dispositions. Therefore, in each case the intrinsic nature and substantial character of the transaction should be detected to test its incompatibility with or subjection to the clauses of the statute." Grell v. Kelly, 134 N.J. Eq. 593 (Prerog. 1944), affirmed on this phase, 132 N.J.L. 450 (Sup. Ct. 1945).
Here the inter vivos transfer in respect to the transferor was complete, unqualified, and consummate. No right to revoke or amend was reserved. Such transferences are not taxable by our statute unless it is made evident by the fair preponderance of the relevant and credible proof that they were made by the transferor in contemplation of death. Squier v. Martin, supra; Lee v. Walsh, supra. The respondent does not in the present appeal contend that the transfer was made in contemplation of death. The transfer was made in 1941. The transferor died in 1949. The establishment of the trust in the circumstances has more resemblance to a bargain than to a chosen makeshift to effectuate in essence a testamentary disposition.
The transfer was obviously associated with a coexisting lifetime obligation and not with any post mortem purpose. The corpus of the trust was manifestly intended to constitute immediate security for the transferor's faithful compliance with the terms of the consent decree of the court. The interests in remainder became immediately vested to pass into the possession and beneficial enjoyment of the remaindermen upon the death of the transferor's former wife without any dependency whatever upon the occurrence of the transferor's death.
The assessment under review is annulled.