SAMUEL MacCLURKAN AS ADMINISTRATOR OF THE ESTATE OF MAY LOGAN MacCLURKAN, APPELLANT, v. NEWTON A. K. BUGBEE, AS COMPTROLLER OF THE STATE OF NEW JERSEY, RESPONDENT.

Submitted May 31, 1929—Decided May 19, 1930.

For the appellant, *Haines & Chanalis* (*Addison S. Pratt*, of the New York bar, on the brief).

For the respondent, *William A. Stevens*, attorney-general.

The opinion of the court was delivered by

CASE, J. The comptroller of the treasury assessed a tax of $5,590.52 against the estate of May Logan MacClurkan, deceased, upon the interest of Theron Logan Rathje, a life beneficiary under a trust deed made by the decedent in her lifetime. Under writ of *certiorari* the Supreme Court affirmed the assessment. The administrator appeals.

On August 26th, 1921, in the city of Chicago, Mrs. Mac-Clurkan, then May Logan, executed a trust deed to Frank C. Rathje, wherein she, as donor, transferred and conveyed certain securities to the trustee, he to pay the income therefrom to the donor during her lifetime and after her death to the donor's children, but if there were no children then to Theron Logan Rathje and if the latter should afterwards die then the income was to "revert" to his mother, Josie Logan Rathje. The instrument gave the trustee "as wide latitude in the selection and making of any investments as if he, as an individual, were the absolute owner of the trust property" but reserved to the donor the right to revoke the agreement after a period of five years from the date thereof. The donor died within the five-year period and, therefore, had no exercisable right of revocation at any time during her subsequent life. The trust deed contained no provision for the disposition of the *corpus* after the termination of the life estates.

At the execution of the trust deed May Logan was a resident of the State of Illinois. The trustee, the beneficiary (Theron Logan Rathje), and the latter's mother were then and have constantly remained residents of that state. All of the trust property was then and has ever since been physically present there. The trust property consisted of Liberty bonds, corporate stocks and bonds, and promissory notes of individuals. It did not include any shares of stock of corporations organized under the laws of New Jersey, or of any national banking association located therein, or any obligations owing by a resident thereof. Subsequently, May Logan married Samuel MacClurkan, became a resident of New Jersey and

so remained until her death, without issue and intestate, March 4th, 1924.

The appellant contends that the State of New Jersey, at the time of the execution of the trust deed, had no jurisdiction over either the person of the donor or the property of the trust; that the title to the property passed forthwith under the terms of the trust deed to the trustee independent of any rights conferred, and free of any obligations imposed, by this state; and that the succession tax laid upon the transfer is, therefore, illegal because it violates the first clause of article 1 and paragraph 16 of article 1 of the New Jersey constitution and also contravenes the due process clause of the fourteenth amendment to the United States constitution. Respondent counters with the argument that the transfer was intended to take effect in beneficial possession and enjoyment after the death of the donor and that the law of the jurisdiction where the donor was domiciled at the time of her death is effective for the taxation of intangible personal property so transferred. The issue differs from that of any decided case brought to our attention in that the decedent, though resident in this state at the time of her death, was not so resident at or prior to the execution of the trust deed and, during the period of her residence here, had no exercisable power of revocation. We consider that a determination may be reached without reference to either the state or the federal constitution.

The comptroller assumed to act under the authority of "An act to tax the transfer property of resident and non-resident decedents by devise, bequest, descent, distribution by statute, gift, deed, grant, bargain and sale in certain cases," approved April 20th, 1909, as variously supplemented and amended, and particularly as amended by chapter 174 of the pamphlet laws of 1922. By that amendment section 1 of the act is reframed to provide for a transfer tax on decedents' estates in five instances classified numerically. Under the admitted facts of the case, it is apparent that, if the statute justifies the tax, the authority is to be found in the following provision from the third subdivision: "A tax shall be and is hereby imposed upon the transfer of any property  *  *  *  or of

any interest therein or income therefrom in trust or otherwise  \*  \*  \* in the following cases  \*  \*  \* Third. When the transfer is of property made by a resident  \*  \*  \* by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death \*  \*  \*."

The attorney-general leans heavily upon the opinion of this court rendered in *Carter* v. *Bugbee*, 92 *N. J. L.* 390, wherein the Chief Justice, with his accustomed clarity and acumen, applies to an antecedent trust by a non-resident donor the rule concerning the vesting of contingent estates and concludes that, because there was neither actual tradition of the property nor transfer of title to the estate in remainder to the beneficiaries until the death of the donor, there was no constitutional objection to a tax upon the transfer. The estate was that of a non-resident decedent, and the trust deed had been executed before the passage of the tax act. The tax was imposed with respect to shares of stock of New Jersey corporations. The narrow question there decided, to use the language of the opinion, was whether a transfer tax could be legitimately imposed by the legislature upon property which had been made the subject of a trust deed executed and delivered before the enactment of the statute, when such deed did not operate to transfer the title to such property until after the tax act came into being. That is not the present question. Inasmuch as the gift to Theron Logan Rathje was contingent upon there being no children of May Logan at the time of her death, it is, perhaps, true that, under the principle stated in Carter *v.* Phelps, the gift did not vest in the beneficiary until such death; but that is not a pivotal fact and does not help materially toward determining whether the transfer under assessment was of such a character and made under such circumstances as to come within the purview of the statute, which we regard as the question to be decided.

The recent decision of the United States Supreme Court in *Farmers Loan and Trust Co.* v. *Minnesota*, 280 *U. S.* 204,

flatly overruling, as it does, *Blackstone* v. *Miller,* 188 *Id.* 189; 47 *L. Ed.* 439, is indicative of a more restricted judicial conception of the power of a state to extend its taxing arm outside its boundaries. As Mr. Justice McReynolds well says: "Taxation is an intensely practical matter and laws in respect of it should be construed and applied with a view of avoiding as far as possible, unjust and oppressive consequences."

Another recent and significant tax decision of the United States Supreme Court is that of *Safe Deposit and Trust Co.* v. *Virginia,* 280 *U. S.* 83, wherein the State of Virginia sought to lay and collect an annual tax levy upon and from the *corpus* of trust property physically in the State of Maryland under the custody and control of a Maryland trust company; the donor of the trust having been, prior to his death, and the *cestuis quel trustent* being now, domiciled within the State of Virginia. The opinion reads in part: "Ordinarily this court recognizes that the fiction of *mobilia sequentur personam* may be applied in order to determine the *situs* of intangible property for taxation. But the general rule must yield to an established fact of legal ownership, actual presence and control elsewhere and ought not to be applied if so to do would result in inescapable and patent injustice whether through double taxation or otherwise. Here, where the possessor of the legal title holds his securities in Maryland, thus giving them a permanent *situs* for lawful taxation there, and no person in Virginia has the present right to their enjoyment or power to remove them, the fiction must be disregarded. It plainly conflicts with fact; the securities did not and could not follow any person domiciled in Virginia. The actual *situs* is in Maryland and cannot be changed by the *cestui que trust.*" The case is not an authority on the question now before us as the tax under appeal was not a transfer tax on a decedent's estate; nevertheless the reasoning is illuminative.

Mr. Justice Garrison, speaking for our Supreme Court concerning the collateral inheritance tax law of 1894 (*Pamph. L.* 1894, *p.* 318), said: "Examination will show that the consensus of judicial opinion is that the impost we are con-

sidering is not a tax upon property, but is a premium or privilege upon the devolution of property—in fine, a succession tax, and that as such it rests fundamentally upon the sovereign right of a state to withhold, and hence to limit, the right of testamentary disposition or of intestate succession." *Neilson* v. *Russell*, 76 *N. J. L.* 27, 33. Likewise Mr. Justice Swayze in the same case on appeal (*Ibid.* 655), reversing the determination, but not that particular. line of reasoning, says: "The ground upon which this extraordinary exaction, and the exemption of small estates, and the taxation by some states, and at one time by the federal government, of large estates at a higher rate, is sustained, is, as stated in the opinion of the Supreme Court, that 'the rights of testamentary disposition and of succession are creatures of law upon the exercise and operation of which the lawmaker may impose terms.' We think it follows logically that the only law which can impose the terms is the law that creates the right."

Mr. Justice Stone in his concurring opinion in *Farmers Loan and Trust Co.* v. *Minnesota, supra,* said: "We are not here concerned with a property tax but with an excise or privilege tax imposed on the transfer of an intangible, and to sustain a privilege tax, the privilege must be enjoyed in the state imposing it." In *Eastwood* v. *Russell*, 81 *N. J. L.* 672, 677, this court, referring to the bequest to the appellant and speaking through Mr. Justice Voorhees, said: "What passed to him   *   *   *   clearly must be in virtue of the gracious policy of the state in granting to him a privilege to acquire it through testament   *   *   *." In *Dixon* v. *Russell*, 79 *Id.* 490, the Chief Justice, removing an apparent misapprehension of the purport of *Neilson* v. *Russell*, 47 *Id.* 655, said: "We do not doubt the power of the state to impose a succession tax, where the succession is by reason of death, without regard to the domicile of the decedent from which the property passes, provided that the property which is the subject of the succession is within the jurisdiction of the state." See, also, *Matter of Estate of Swift*, 137 *N. Y.* 77; *Walker* v. *Treasurer and Receiver-General*, 221 *Mass.* 600; *Frick* v. *Pennsylvania*, 268 *U. S.* 473.

The entire rationale of such taxation depends either upon some actual or colorable service by the government to the person or the property taxed, or at least upon control either of the person or the property or the process by which the devolution of title, which occasions the tax, occurs.

It has not been shown to us that the State of New Jersey has contributed in any way, governmental or otherwise, either in fact or by legal fiction, toward or for the subject-matter of the gift, or the act of giving (viz. the transfer), or the giver or the recipient, as the foundation for the imposition of a tax. The only affirmative factor is that after all the effective steps had been taken the donor came to New Jersey, lived and died here, meanwhile having no care or custody of the fund, no control thereover and no power to revoke the provisions of the trust instrument. The creation of such wealth as the fund contains was had elsewhere. The investment, whether as to the actual placing of the money or as to the securities or certificates given in evidence thereof, has never been in this state. The legal owner, namely, the trustee, and the beneficiary have never been in the jurisdiction. The beneficiary takes under an instrument that was created in, and that for its validity and enforcement depends upon, the laws of another state.

The foregoing gives the legal and factual setting within which the present case lies and with regard to which we must assume the legislature acted when it provided that a tax shall be imposed upon the transfer of property "when the transfer is of property made by a resident * * * by deed, grant, bargain, sale or gift made in contemplation of death." We think that the legislature did not intend to extend its taxing power to a transfer, the single tenuous connection of which with this state is that the donor later died a resident thereof, having meanwhile been the recipient of the income. Had that been the intent, the legislature would have used more apt language in view of the technical and controversial character of the subject-matter. To say that a transfer is made by a resident of this state, when it admittedly was made by a person who at the time was not and never had been such a

resident and who, though she did subsequently become a resident, had no power, during the period of her residency to make or unmake the transfer, seems to us self-contradictory. It well nigh carries its own disproof.

The situation is not saved, in our opinion, by the fact that the beneficial gift to Theron Logan Rathje did not vest in him until May Logan's death. The State of New Jersey had no control over it, or the subject-matter thereof, in any phase or at any time; neither did May Logan while she was a resident of this state. It appears to us to be immaterial that the interest of the beneficiary was contingent at the time the deed of trust was executed as that interest finally vested by reason of the deed of trust and not because of any privilege granted, or power of nullification withheld, by the State of New Jersey. See *May* v. *Heiner, Collector,* 50 *Sup. Ct. Rep.* 286, decided April 14th, 1930.

We find that the gift to Theron Logan Rathje is not within the purview of the statute and that the assessment of $5,590.52 was improperly assessed thereon and should be set aside. The writ of *certiorari* goes only to that tax. Appellant's brief mentions without argument a tax of $295.98 assessed as a compounded tax upon the remainder estate after the said life estate in the trust fund. Our understanding is that this is a tax laid against the remainder over after the life estate. As the trust deed made no disposition of this remainder interest, such interest was a part of the estate of May Logan MacClurkan at the time of her death and a tax may properly be assessed as to it.

Judgment below is reversed. There should be stricken from the assessment the amount of $5,590.52 laid against the interest of Theron Logan Rathje.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 10.