# Richmond

COMMONWEALTH OF VIRGINIA V. BETTIE WATKINS MORRIS.

March 7, 1955.

Record No. 4325.

Present, All the Justices.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General* and *C. F. Hicks, Assistant Attorney General,* for the Commonwealth.

*Bowles, Anderson & Boyd,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The appellee, Mrs. Morris, filed an application for the correction of an assessment of inheritance taxes on her life estate in a trust established by her late husband. The court below held that the life estate was not subject to tax and ordered that the taxes which had been paid under protest be refunded. The Commonwealth appeals and the question presented is whether the assessment was authorized by § 58-152 of the Code as applied to the stipulated facts.

Section 58-152,* so far as applicable to the facts of this case, levies an inheritance tax upon the share of a beneficiary in "all property within the jurisdiction of this Commonwealth" which shall pass by a grant or a gift intended to take effect in possession or enjoyment at or after the death of the grantor or donor, or by a transfer under which the transferor has retained for his life the possession or enjoyment of the property or the income therefrom.

---

* "§ 58-152. Property subject to tax; to whom taxed; levy; gifts prima facie in contemplation of death.—State inheritance taxes as hereinafter prescribed are hereby levied upon the shares of the respective beneficiaries in all property within the jurisdiction of this Commonwealth, real, personal and mixed, and any interest therein, which shall pass:

"(1) By will or by the laws regulating descents and distributions;

"(2) By grant or gift made or intended to take effect in possession or enjoyment at or after the death of the grantor or donor;

\* \* \*

"(4) By a transfer under which the transferrer has retained for his life the possession or enjoyment of the property or the income therefrom or the right to designate or change the beneficiaries who shall be entitled to possess or enjoy the property or the income therefrom;

\* \* \*."

The stipulated facts pertinent to the issue are as follows:

William Morris, who created the trust, was born in Goochland county, Virginia. In 1905 he married the appellee in North Carolina and in 1907 they purchased a home and established a residence in the city of Durham in that State. In 1910 the tobacco company by which Mr. Morris was employed sent him to Shanghai, China. Around 1915 he built a home in Shanghai and lived there until 1928, when he was transferred to London, England. In the meantime he sold his home in Durham in 1924. Soon after reaching London he bought an apartment and lived there until 1938, when he was retired by his company.

On October 16, 1930, Mr. Morris, while living in London, executed the trust indenture which is the subject of this tax question. By it he transferred to Guaranty Trust Company of New York as trustee the trust estate, consisting only of intangible personal property (money, stocks and bonds), in trust to collect the income therefrom and to pay the net income to Mr. Morris for his life and after his death to his wife, Bettie Watkins Morris, the appellee; and on the death of the survivor, to divide the principal into seven equal shares and deliver them to the persons designated in the trust instrument.

The securities so transferred by the trust indenture had been acquired by Mr. Morris with funds he had accumulated outside of the United States and after he left the United States to live in China. He was never domiciled in Virginia at any time while acquiring the funds, nor after he acquired the securities prior to the execution of the trust indenture. It is stipulated that the trust indenture was irrevocable, and that by it, together with a subsequent writing dated October 14, 1931, "he completely and fully divested himself of any right, title, interest, control or incident of ownership of the trust corpus."

The trust was created by Mr. Morris in order to secure competent and safe management of the securities while he was abroad and afterwards during his retirement and old

age, and it is agreed that it was "in no way an effort by Mr. Morris to secure any tax advantage from any state or country."

While residing abroad Mr. Morris retained his American citizenship and paid income tax to the United States and Great Britain, and it is stipulated that his domicile was Durham, North Carolina, prior to and at the time he executed the trust.

After his retirement in 1938 Mr. Morris returned to America and after traveling and temporarily residing in different places he bought a home in the city of Richmond, Virginia, in 1940, and he and his wife lived there until he died on July 23, 1950. He left an estate in Virginia on which his executors have paid an inheritance tax to this Commonwealth, and during the years he was domiciled in Virginia he paid to the Commonwealth income tax on his income from the trust, and Mrs. Morris now pays income tax on the income to her from the trust.

As noted, § 58-152 levies an inheritance tax upon the share of a beneficiary "in all property within the jurisdiction of this Commonwealth" which passes to the beneficiary by any of the means set forth in the statute. The tax imposed is a succession tax, laid upon the right to succeed to the property or to an interest therein as distinguished from an estate tax laid on the right to transmit property. "An inheritance or estate tax is not levied on the property of which an estate is composed. Rather it is imposed upon the shifting of economic benefits and the privilege of transmitting or receiving such benefits." *West* v. *Oklahoma Tax Commission*, 334 U. S. 717, 727, 68 S. Ct. 1223, 1228, 92 L. ed. 1676, 1682. While it is a succession tax, it is the value of the property succeeded to that determines the amount of the tax. Section 58-153 of the Code, fixing exemptions and rates, provides that "so much of such property," *i.e.*, the property within the jurisdiction of the Commonwealth as referred to in § 58-152, as passes to certain classes of beneficiaries shall be taxed at specific rates.

To be taxable the property that passes must be within the jurisdiction of the Commonwealth by the express terms of § 58-152, as well as by general law. "A statute of a state which undertakes to tax things wholly beyond her jurisdiction or control conflicts with the Fourteenth Amendment." *Safe Deposit & Trust Co.* v. *Commonwealth of Virginia,* 280 U. S. 83, 92, 50 S. Ct. 59, 61, 74 L. ed. 180, 184.

This rule, however, "does not mean that the sovereign power of the state does not extend over intangibles of a domiciled resident because they have no physical location within its territory, or that its power to tax is lost because we may choose to say they are located elsewhere. * * From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. * * ." *Curry* v. *McCanless,* 307 U. S. 357, 366, 59 S. Ct. 900, 905-6, 83 L. ed. 1339, 1347.

The common law maxim of *mobilia sequuntur personam,* "which means only that it is the identity or association of intangibles with the person of their owner at his domicile which gives jurisdiction to tax," *Curry* v. *McCanless, supra,* 307 U. S. at p. 367, 59 S. Ct. at p. 906, 83 L. ed. at p. 1348, is applied not only in the United States Supreme Court but in practically all others. *Blodgett* v. *Silberman,* 277 U. S. 1, 9, 48 S. Ct. 410, 413, 72 L. ed. 749, 757. Intangibles are rights which are not related to physical things and are "but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights." *Curry* v. *McCanless, supra,* 307 U. S. at p. 366, 59

S. Ct. at p. 905, 83 L. ed. at p. 1347. In that case a power of appointment reserved by the settlor, a resident of Tennessee, in a trust transferring to a trustee in Alabama certain intangibles in that State and taxable there, was held to give the right to Tennessee also to tax the same intangibles on the death of the settlor.

The Commonwealth contends that the Morris trust was within the jurisdiction of this Commonwealth for inheritance tax purposes under the statute because Mr. Morris was domiciled in Virginia at the time of his death and the "succession to economic enjoyment" of the trust did not pass to Mrs. Morris until then. Specifically it is argued that when Mr. Morris re-established his domicile in Virginia in 1940 he was accompanied by his right to receive the income from the trust held in New York, which right constituted the use, possession and enjoyment of the trust; that Mr. Morris continued to use and enjoy in Virginia the income from the trust until his death in 1950, and that it was not until then that Mrs. Morris acquired any use, possession or enjoyment of the trust property; that only then did succession to the enjoyment, use and possession of the trust pass to Mrs. Morris, and that this was the taxable event; that it is this succession upon which Virginia and the majority of the States in this country impose inheritance taxes.

The Commonwealth cites two cases from the Supreme Court as being closest to the present case with respect to facts and statutes involved. One is *Graves* v. *Elliott*, 307 U. S. 383, 59 S. Ct. 913, 83 L. ed. 1356; and the other *Central Hanover Bank & Trust Co.* v. *Kelly*, 319 U. S. 94, 63 S. Ct. 945, 87 L. ed. 1282.

The former involved a trust in which the settlor reserved a possibility of reverter, as well as power to revoke the trust and revest herself with title to the trust property. The court accordingly held that the State of domicile had jurisdiction to tax the transfer of the property at the settlor's death. In the latter case the transferor was a resident of New Jersey, both when he made the trust and when he

died. The securities in the trust were therefore within the jurisdiction of New Jersey and the court accordingly held that the trust was subject to the New Jersey inheritance tax law.

The case of *Hackett* v. *Bankers Trust Co.*, 122 Conn. 107, 187 A. 653, however, furnishes support for the Commonwealth's contention. One of the trust instruments involved in that case was executed in 1918, before the settlor became domiciled in Connecticut. It conveyed intangible property to a New York trustee and established separate trusts of three portions of the trust corpus, in two of which the settlor reserved a possibility of reverter; but in the third he gave a life use to his wife, a successive life use to himself if he survived her, and at the death of both the corpus was payable to their issue, if any, and if none then to Lehigh University. After executing the trust the settlor moved to Connecticut and died there.

In its opinion, holding the 1918 trust taxable, the court gave weight to the possibility of reverter in the first two trusts in connection with the doctrine of *mobilia sequuntur personam*, but said that the statute was intended to reach the shifting of the enjoyment of property from a former owner at his death, even though such shifting followed necessarily from a prior transfer *inter vivos*, and concluded: "* * We regard the domicile at death as determinative of the right to tax rather than that at the time of the creation of the trust, and hold that taxability, by Connecticut, under the 1918 trust, is not affected by the fact that at its creation the settlor was domiciled elsewhere. * *." 122 Conn. at p. 123, 187 A. at p. 659.

The Connecticut statute under which the trusts were thus taxed provided for a tax on "property within the jurisdiction of this state, and any interest therein, * * which shall pass * * by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor, to any person in trust or otherwise." (See *Blodgett* v. *Guaranty Trust Co.*, 114 Conn. at p. 212, 158

A. at p. 246). The opinion did not discuss the effect of the phrase "property within the jurisdiction of this state."

*MacClurkan* v. *Bugbee*, 106 N. J. L. 192, 150 A. 443, reaches a different conclusion. There the settlor transferred to a trustee certain securities with direction to pay the income therefrom to the settlor during her lifetime and after her death to her children, but if none then to one Rathje, and upon his death to his mother. There was no disposition of the corpus of the estate after the termination of the life estates. At the execution of the trust the trustees and Rathje were and remained residents of Illinois, and all of the trust property was then and afterwards physically present there. The settlor was also then a resident of Illinois, but subsequently became a resident of New Jersey and remained there until her death. On her death New Jersey assessed a tax on the life interest which passed to Rathje, under the New Jersey statute which imposed a tax "upon the transfer of any property * * or income therefrom, in trust or otherwise * * when the transfer is of property made by a resident * * intended to take effect in possession or enjoyment at or after such death. * *." 106 N. J. L. at pp. 194-5, 150 A. at p. 444.

The court held that the gift to Rathje was not within the purview of the statute on the grounds that not only had the transfer been made by a person who was not then a resident of the State, but that after all the effective steps had been taken the settlor came to New Jersey, lived and died there, "meanwhile having no care or custody of the fund, no control thereover, and no power to revoke the provisions of the trust instrument. * * The beneficiary takes under an instrument that was created in, and that for its validity and enforcement depends upon, the laws of another state.

"* * We think that the Legislature did not intend to extend its taxing power to a transfer, the single tenuous connection of which with this state is that the donor later died a resident hereof, having meanwhile been the recipient

of the income. Had that been the intent, the Legislature would have used more apt language in view of the technical and controversial character of the subject-matter. * *." 106 N. J. L. at p. 198, 150 A. at p. 446.

In *Hooton* v. *Neeld*, 12 N. J. 396, 97 A. (2d) 153, the court declined to overrule the *MacClurkan* case, *supra*, but applied its ruling to similar facts and held that an inheritance tax was not assessable on a transfer of intangibles under an irrevocable trust executed and delivered by the transferor while a resident of Virginia, where the sole right retained by the transferor was the right to receive the income from the property transferred even though the transferor subsequently moved to New Jersey and died a resident thereof.

The Commonwealth claims support from the case of *Commissioner of Internal Revenue* v. *Church's Estate*, 335 U. S. 632, 69 S. Ct. 322, 93 L. ed. 288. In 1924 Church executed in New York an irrevocable trust, transferring to himself and two brothers as co-trustees certain corporate stocks to pay the income to him for life and on his death, which occurred in 1939, the trust to terminate and the assets to be distributed according to directions which, however, did not include the contingency of Church's dying without children and without any of his brothers or sisters or their children surviving him. It was held, contrary to the ruling of *May* v. *Heiner*, 281 U. S. 238, 50 S. Ct. 286, 74 L. ed. 826, 67 A. L. R. 1244 (which was overruled), that because this trust instrument reserved a life estate in the trust property Church had a property right therein which did not pass to the trust beneficiaries when the trust was executed, but remained in him until he died, when for the first time the stock with all its property attributes "passed" from Church to the trust beneficiaries and, therefore, should be included in the estate of the settlor in assessing federal estate tax.

However, the court was not there dealing with a question of territorial jurisdiction. As observed by Chief Justice Hughes in his dissent in *Graves* v. *Elliott*, *supra*, "The case

of federal taxation is not analogous as there are no state boundaries to be considered when the federal tax is laid." 307 U. S. at p. 392, 59 S. Ct. at p. 917, 83 L. ed. at p. 1363.

Section 58-152, as we have seen, lays the inheritance tax on the shares of beneficiaries in property "within the jurisdiction of this Commonwealth." Property may be in this jurisdiction either actually or constructively. It is here actually when it is physically present. It is here constructively when it is intangible property which has not acquired a tax situs elsewhere by reason of its use and its owner is domiciled here. It is admitted that none of this trust property was ever physically present in Virginia and that Mr. Morris was not domiciled in Virginia when he executed the irrevocable trust instrument in 1930. The appellee concedes that if Mr. Morris had been a resident of Virginia at the time he created the trust, or if he had retained a substantial measure of control over the trust property when he moved to Virginia, the doctrine of *mobilia sequuntur personam* would apply, the trust estate would have followed him here, and would have been within the jurisdiction of this Commonwealth and subject to the inheritance tax imposed by § 58-152. We cannot say, however, that his retention of the life estate gave him such an interest in the trust estate as to cause it to follow him into this Commonwealth when he moved here, as against the stipulation that upon the execution of the trust indenture "he completely and fully divested himself of any right, title, interest, control or incident of ownership of the trust corpus." The share, *i.e.*, the life estate, of Mrs. Morris therein was not taxable under the provisions of § 58-152.

For the reasons stated the order appealed from is

*Affirmed.*